1810.

*Chambersburg,*
*Saturday;*
*October 6.*

## Lessee of Dunlop *against* Speer.

IN this case a judgment was entered for the plaintiff, in the Circuit Court of *Franklin* county, on the 4th *October* 1804, with an agreement that the same should be released upon the payment of 6284 dollars 50 cents, due on certain articles of agreement between the plaintiff and defendant for the sale of a tract of land; 2000 dollars to be paid in two months, and the residue to be paid, one fourth in six months, and one fourth at the end of every succeeding six months until the whole was discharged; execution to stay in the mean time. The whole therefore became due on or before the 4th *October* 1806.

On the 19th *March* 1805, *Dunlop* assigned the judgment to *Peter Everley* and *James Riddle,* in trust to secure to a certain *John Sheller* the repayment of 1600*l.* without interest on the 1st of *April* 1809. On the same day articles of agreement were executed between *Sheller* and *Speer* the defendant, by which the former agreed to lend *Speer* the said sum of 1600*l.* to be repaid on the 1st of *April* 1809, without interest, for the repayment of which *Speer* was to give *approved security;* and in consideration of this and of certain agreements and covenants on the part of *Sheller*, *Speer* covenanted to pay him 275*l.* per annum, on the 1st *April* 1806, and the three succeeding years. *Sheller* covenanted to serve *Speer* during this period in the capacity of founder at his ironworks, and that his son-in-law *James Moore* should serve him in the capacity of a clerk and manager &c., *Speer* paying him 150*l.* per annum. *Sheller* was also to have the option of becoming a partner in the ironworks upon certain terms, after the expiration of eighteen months.

In consequence of misunderstandings between *Sheller* and *Speer,* the former did not elect to become a partner; and the 1600*l.* not being paid, he issued an *habere facias* in *June* 1809, which was stayed by Judge *Yeates,* until the further order of this court.

Accordingly the court now was moved to set aside this

*If execution is stayed by the agreement of the parties, the " year and day" runs only from the time when such stay expires; and this, whether there is an entry of the* cesset *on the record, or it is a matter of private arrangement out of court. The court will take notice of such an agreement though not on record.*

*A judgment against A was assigned to B, to secure money lent to A, and which A covenanted by articles of agreement to repay on a certain day. The court refused to stay execution upon this judgment, to give A time to obtain a verdict against B for damages in consequence of* tortious *acts by him in breach of his covenants in the same articles; though it seems they would, if A's claim was for money paid, or any other account susceptible of liquidation.*

1810.

Lessee of
DUNLOP
*v.*
SPEER.

execution. 1. Because the year and day having elapsed since the stay of execution upon record, viz. the 4th *Oct.* 1806, the execution was irregular, without a *scire facias*. 2. Because *Sheller* having broken his covenant to serve *Speer* faithfully as a founder, by neglecting his duty, and decoying away the servants of *Speer* employed in his ironworks, (of which an affidavit was filed) the court upon equitable grounds ought to suspend the execution, until the damages sustained by *Speer*, could be ascertained by a jury.

*Watts* and *Duncan,* in support of the motion, contended upon the first ground, that the only *cesset* of which the court could take notice, that upon record, expired on the 4th *Oct.* 1806, from which time the year and day began to run, and that a *scire facias* should have issued to revive it, prior to the execution. It would be a source of endless mischief, if private agreements, of which there was no memorandum in court, could be used to sustain an execution which on the face of it was irregular; though in fact there was no agreement here, the judgment being merely given as a security, which it would be whether revived or not.

On the second ground, they argued that the 1600*l.* and the covenants by *Sheller* ought not to be separated. It was an appeal to the equitable powers of the court to prevent injustice. It was not necessary to disturb *Sheller's* security. He would have that at all events. But it was equity and nothing more, either to put him to his action, when *Speer* might set off his claim under *Sheller's* breaches of covenant in the same articles, or give it in evidence as an equitable defence, or to suspend the execution until *Speer* might try his right against *Sheller.* There could be no doubt that under our act of assembly unliquidated damages in contract might be set off. Unless the motion was granted, *Sheller* would be allowed an inequitable priority in obtaining his demand upon *Speer*, and *Speer* would be inequitably postponed, although both demands arose out of the same articles.

*Dunlop* and *Brown,* contra, held the first reason to be insufficient, because it was perfectly settled, that any act or agreement of the defendant producing the delay, excused a

*scire facias;* and for a very good reason, because the pre-
sumption of payment which alone called for a *scire facias*,
could not arise under such circumstances. Hence a writ of
error prevented the year and day from running; and so an
injunction, notwithstanding some old cases to the contrary.
*Mitchell* v. *Cue* (a), 2 *Saunders* 72. *f*. So also delay by con-
sent of parties. 2 *Bac.* 730., *Execution* H. And it is now im-
material whether the delay appears by matter of record in
the court from which the execution issues, or not. The cases
of *Booth* v. *Booth* (b), and *Winter* v. *Lightbound* (c), which
decided that an injunction from chancery was no excuse for
the want of a *scire facias* in the King's Bench, went upon the
ground, that the cause of the *cesset* must appear in the court
where the judgment is rendered. But they were expressly
overruled by *Mitchell* v. *Cue*. Here it was impossible, by
the contract of the parties, to take execution until after the
1st *April* 1809; which was of course an agreement that exe-
cution should stay until that time.

The second ground is also insufficient, because the 1600*l.*
was wholly distinct from the general design and object of
the articles. It was money lent, for which *Speer* was to give
approved security; and that security was the judgment. He
knew that execution could be taken out. Both parties con-
templated this remedy; and therefore it is not against equity
for *Sheller* now to use it. But there is another reason against
the delay, that in an action by *Sheller*, these damages claimed
by *Speer* could not be defalked. The affidavit states that
they arise from misconduct of *Sheller*, that is from *torts*
done by him. Put it that they are for nonfeasance, or ne-
glect of duty under these articles, they cannot be set-off. The
attempt was made in *Howlet* v. *Strickland* (d) to plead by
way of set-off unliquidated damages arising from breaches
by the plaintiff of other covenants in the same agreement on
which he brought his action; and the breaches were all for
non-delivery of alum; but it would not do. They could not
be pleaded or given in evidence even as an equitable defence.
*Kachlin* v. *Mulhallon.* (e)

Lessee of
DUNLOP
*v.*
SPEER.

(a) 2 *Burr.* 660.    (c) 1 *Stra.* 301.    (e) 2 *Dall.* 237.
(b) 1 *Salk.* 322.    (d) *Cowp.* 56.

TILGHMAN C. J. after stating the case, delivered his opinion as follows:

The defendant applies to the court to set aside this execution on two grounds: 1. That the year and day having elapsed, the execution was irregular. 2. That upon equitable principles, the court ought to suspend the execution until it is ascertained by the verdict of a jury what damages the defendant has sustained by *Sheller's* breach of the covenants in the articles of agreement.

1. On this point there is no difficulty. The reason of the plaintiff being put to his *sci. fa.* after the lapse of a year and day, is, that it may be presumed the debt has been paid, since the judgment. A year and day has been thought sufficient time to raise this presumption. But it must be a year and day from the time the plaintiff was at liberty to take out execution. When a stay of execution is given on the record, it never was doubted, but the year and day was to be reckoned from the expiration of the stay. The reason is the same, when a stay has been given by agreement of the parties, not entered on record. For some time the courts were unwilling to take notice of any agreement not on record. But I take it to be now settled, that they will receive evidence of such an agreement. In *Mitchell* v. *Cue and wife*, 2 *Burr.* 660, it is laid down, that where delay of payment has been obtained at the instance, or for the benefit of the defendant, a *sci. fa.* is not necessary. This principle is highly reasonable; and when applied to the fact in the present case, it will prove, that the execution was regularly issued, because a year and day had not elapsed from the 1st *April* 1809, the day given to the defendant for the payment of the 1600*l.*

2. The claims set up by the defendant, arising from *Sheller's* breaches of covenant, are acts of *nonfeasance*, or *malfeasance;* such as neglect of duty, and decoying the servants of the defendant employed in his ironworks, to leave him. If the defendant alleged payment of money, or any thing which in its nature admitted of liquidation, I should think there was strong ground for his motion. But it appears to me, that to stop the execution on the grounds contended for,

1810.

Lessee of
DUNLOP
*v.*
SPEER.

would be an extraordinary interference, not necessary, and not consistent with the intent of the parties. The 1600*l.* advanced by *Sheller*, was to be repaid on a certain day, and to secure a punctual payment, this judgment was assigned. Both parties must be supposed to understand the nature of the judgment, and that the plaintiff might inforce payment by execution. I can see no part of the articles, which intimates an intention, that the payment of this money should be blended with the other covenants, or that before payment should be made, it should be necessary to inquire into the performance of the agreement. By accepting this judgment as security for the 1600*l.*, that part of the articles which required security to be given was performed, and thus separated from the other parts. I am therefore of opinion, that if the defendant has suffered damage by the plaintiff's non-performance of his covenant, in the manner alleged, he should be left to his remedy by action on the articles.

YEATES J. I have felt considerable difficulties, in forming my opinion on the present motion. I readily agree, that the execution is not to be set aside because no *scire facias post annum et diem* issued to revive the judgment. The arrangements made by the parties for their mutual convenience, precluded the necessity of such process, and there can be no pretext of surprise in the case. 2 *Burr.* 660.

If the agreement between the defendant and *John Sheller* looked forward to a new security, for the repayment of the 1600*l.* advanced by the latter, then I should be disposed to inquire into the legal consequences which would arise on the security being given. In such case, I think the failure of *Sheller* to perform his covenants, such as his refusing to fulfil the duties of a founder in the furnace, &c. might be given in evidence under the defalcation act to diminish his claim to the 1600*l.* But I do not conceive, that damages arising *ex delicto*, from *torts*, such as bad management as a founder, or the acts of inciting the workmen to quit the employ of *Speer*, could be adduced to defeat the claim of *Sheller*, in a suit founded on this new security. On the other hand, if the parties contemplated the partial assignment of this judgment, as the security to be given under the agreement, then I should

be of opinion, that any nonfeasance on the part of *Sheller* under his contract, should not be admitted to destroy the effect of the judgment. I have on reflection adopted the latter construction of the articles between the parties, and view *Sheller* in the same light as Mr. *Dunlop*, as to the 1600*l.* secured. We are called upon to interpose our extraordinary powers, in order to prevent injustice being done. It is a case within the immediate discretion of the court; and if *Speer* has suffered by the breach of contract of *Sheller*, or by his tortious acts, he has a full and ample remedy under the agreement, or in a suit adapted to the merits of the case.

I concur that the defendant's motion be denied.

BRACKENRIDGE J. Where nothing is heard from a judgment for a year and day, it is presumed to be satisfied, and it is reasonable that the defendant should have an opportunity of shewing that; and hence the *scire facias.* But where from the stay given no such presumption arises, there is no *scire facias.* Here it is not until after the 1st *April* 1809, that the year and day begins to run, and within the year and day after, the execution issued. It is therefore not irregular on this ground, and cannot be set aside. In the nature of it, was a *scire facias* necessary to ground an execution? Was the plaintiff bound to anticipate the pretence of such a satisfaction, and to give the defendant an opportunity of shewing it? That would be unreasonable, and the plaintiff could not be supposed to know that such a defence would be set up in bar of his execution. It is therefore not irregular on this ground, and cannot be set aside.

But cannot it be stayed with a view to any order of the court? What order have the court a power to make? Where satisfaction is alleged in performing something specified under the judgment, the court can hear it on motion; and if it is of a nature of which they can judge and determine without the intervention of a jury, they will do it. In this case it is clear they cannot. It is not a satisfaction in money that is alleged, nor services, nor property of an ascertained value, in which cases they could by themselves, or auditors appointed, settle the payment made, and the balance due.

But have they the power to direct a *scire facias* by special

order? I think so. I see no principle of law against it. It is agreeable to the reason of the law on which the *scire facias* is founded. But will they do it in this case? That must be a matter of discretion. It is not the payment of money that is alleged, nor any thing done or performed *eo intuitu,* or directly with a view to satisfaction; but damages sustained under a contract immediately connected with the payment of the money secured by the judgment. How connected? The sum to secure which the judgment was in part given, was money borrowed from the *cestui que use* of the judgment, which by an agreement was borrowed of the *cestui que use* who was to receive wages and do services, which he has not done. He brought a suit on the article for his services, in which suit his default might have been set off, and judgment obtained even for the balance if any found, under the head of damages against him. This was not done, and it is proposed to set it off under the idea of satisfaction to this judgment; and a *scire facias* specially to be ordered to give the defendant this opportunity. It does not appear to me that justice requires that it should be done; or that the defendant will be without redress without such interposition. I am disposed rather to leave him to his action on the article.

Motion refused,