Tirghman C. J.
It is contended for the defendant, that the evidence was proper, either by way of set-off, or under *250 the plea of non assumpsit, as a defence against the action* As a set-off, I do not think it was evidence. Our act of assembly authorising a sét-off, is expressed in more extensive terms than the British statute ; but it has been settled, that it. does not comprehend matters of a tortious nature. This was decided in the case of Kachlein v. Ralston and others, 1 Yeatest 571, reported under the name of Kachlin v. Mulhallon, 2 Dall. 237. But whether the evidence was admissible under the plea of non assumpsit, is a question of considerable difficulty. The Courts have been struck with the inconvenience of perplexing the jury with matters of a different nature. Hence some Judges have been of opinion, that when the evidence is of such a nature, that the defendant may support an action on it against the plaintiff, it is best to put him to his action, and not suffer him to give the evidence by way of defence. Others, perceiving the impolicy of multiplying suits, and the hardship of not suffering the- defendant to avail himself of matters arising out of the very transaction on which the plaintiff founds his suit, have been for receiving the evidence. I am not permitted to cite the adjudications in the British courts since the American revolution, or it would be easy to shew, that the Judges have differed in opinion, and the question is at the present moment unsettled. As it was likewise unsettled at the time of the revolution, we are at liberty to decide it now according to the reason of the thing, aided by the sentiments expressed from time to time by our own Judges. By the plea of non assumpsit, the defendant puts the plaintiff on proving his whole case, and entitles himself to give in evidence any thing which shews, that at the time the action was commenced, the plaintiff had no right to recover. Conformably to this principle, it is said in Peake’s Law of Ev'zd. 248, that “ if the plaintiff’s demand be compounded of skill and materials, and he has greatly misconducted himself, as where an apothecary, giving medicines on his own judgment, and not under the directions of a physician, appears to have been grossly negligent or ignorant, this fact furnishes a defence on the general issue.” It is evident, that upon the same principles, if a physician sues me for his services, I may give evidence, that he has treated me unskilfully, or if a carpenter brings suit for work done for me, I may shew, that it was badly done. So, whatever be the nature of the services for which the plaintiff demands *251 compensation, I may shew that those services were ill-performed'; for by such evidence, I do no more than meet the plaintiff on his own allegation; I prove, that he did badly, what he ought to have done well. The principle being set- , tied, we have only to apply it to the present case. The plaintiff claimed compensation for services as a house-keeper. It is the duty of a house-keeper to take care of the household goods. The defendant offered to prove, that the plaintiff did not take care of his goods, and to shew the particular manner in which she violated her trust, viz. that she sent sundry articles to her daughter’s house, and suffered her to make use of them. How is neglect of duty to be shewn, but by shewing the particular acts of negligence or malfeasance ? It appears to me, that the evidence was proper, because it went to the gist of the action. But several cases were cited by the plaintiff to shew, that in this Court, similar evidence had been rejected. I will consider those cases. The first was Kachlein v. Ralston, £s?c. mentioned before. The plaintiff brought debt on a bond given by the defendant for the consideration of a mill and land, which he had bought of the plaintiff, and in the contract of sale the plaintiff had reserved the right of erecting a dam on the adjoining land, and swelling the water, provided, that no injury was done to the mill sold to the defendant. The defendant offered to prove, that the plaintiff had erected a dam, which injured his mill. The Court overruled the evidence. The reason is plain; that evidence was no denial of the action, which was debt on a bond; but it was a fact of a nature quite distinct from the debt, and which, if evidence at all, could only be admitted as a set-off. As a set-off, the Court did not think proper to admit it, being of opinion, that it was not within the act of assembly. They left the defendant, therefore, to his action for the tort. The next case relied on by the defendant is Dunlop’s lessee v. Speer, 3 Binn. 169. Dunlop had a judgment against Speer, which he assigned to certain persons in trust, to receive the payment of 1600/. lent by John Sheller to Speer. There were articles of agreement between Sheller and Speer, by which Sheller covenanted to serve Speer, in the capacity of founder at his iron works. Sheller issued an execution in the name of Dunlop, on the assigned judgment, on which Speer moved the Court to stay the execution, and let him into a trial, in order to make a set-off against the judgment, for damages *252 which he claimed under the articles of agreement, in consequence of Shelter's having neglected his duty as founder, and seduced his servants from his service. The Court rejected the evidence; and the main reason was, that it appeared by the articles of agreement, that it was not intended to blend these two transactions ; on the contrary, it was understood, that the assignment of the judgment should stand simply, as a security for the 1600/. lent by Shelter to Speer. Here too, it is plain, that the evidence offered by Speer, if admissible at all, was only so by way of set-off, so that it does not touch the present case, where the evidence was not to maintain a set-off, but to contradict the plaintiff’s statement of his cause of action. But the case of Steigleman v. Jeffries, 1 Serg. & Rawle, 477, shews the strong inclination of this Court to let in evidence, arising out of the same transaction on which the plaintiff founds his action. It was an action of debt on a bond given for the price of some mill-stones purchased by the defendant of the plaintiff, and the defendant was permitted to give in evidence, a warranty of the stones, made by the plaintiff at the time of sale, and a breach of that warranty. The same inclination to let in evidence, appears in the case of Cooke v. Rhine, 1 Bay's Rep. (South. Carolina,) 16. In an action for work, labour, and services done and performed by the plaintiff for the defendant, evidence was admitted on the part of the defendant, that the work was not done within the time agreed on. As to the objection of the plaintiff being taken by surprise, it is no greater surprise, than when under the same plea, the defendant gives in evidence, a release, infancy, or coverture. Neither do I think there is much force in the other objection, that the matter of the evidence is not a liquidated debt or demand. If it is of sufficient magnitude to bar the plaintiff’s action, there will be no need of going into calculations. But if not sufficient for that purpose, it is as easy for the jury in this action to ascertain the amount to be deducted from the plaintiff’s demand, as for the jury in an action to be brought by the defendant against the plaintiff to ascertain the amount of his damage. My opinion is, that the evidence rejected by the Court of Common Pleas, ought to have been admitted, and therefore, the judgment should be reversed, and a venire facias ele novo awarded.
*253 Gibson J.
If it had been at all necessary to give notice of special matter, it is clear, that the mere circumstance of the party to be affected, having been in fact apprised of the nature of the defence intended to be urged, would not be sufficient to render the evidence admissible. Nothing, but the kind of notice prescribed by the rule of Court can be so; and the rule directs, that it shall be in writing. But it is extremely clear, that in this case, neither pleading nor notice was necessary. The evidence was strictly admissible under the plea of non assumpsit, .for it went to the consideration, which is the gist of the action. The plaintiff claimed for wages due her for having, during a certain period, performed the duty of house-keeper of the defendant. Is it not competent for him to shew she was guilty of malfeasance as such? that she did not demean herself in the execution of her trust in a faithful manner ? and that instead of taking proper care of his house, and the property iti it committed to her charge, she had wantonly wasted his goods or clandestinely given them away ? Assumpsit is an equitable action, and the party claiming performance of the promise, must shew, that every thing is fair and honest on his part. In this case, the consideration of the promise was the performance of a trust;—Shall not the plaintiff be at liberty to. shew that the trust, instead of being performed, was violated? Although, I agree, an action might be maintained by the defendant against the plaintiff for embezzling his property, yet, there is nothing in the evidence that looks like defalcation or special matter, not arising out of, but unconnected with, the plaintiff’s demand. The case of Dale v. Sollet, 4 Burr. 2133, is much stronger in that respect than the present. There the defendant, a ship-broker, had been the plaintiff^ agent in suing for a sum of money. He recovered 2000/. which he paid over, all but 40/. which he retained for his trouble. To an action for money had and received he pleaded the general issue, and offered to prove, that what he' retained was a reasonable allowance. It was objected the evidence was not admissible, without a plea set-off, or at least notice. Lord Mansfield, in delivering the opinion of the Court, said, the plaintiff could recover only what he was in equity and conscience entitled to, which could be no more than what remained, after deducting all just allowances out of the very sum demanded; and that it was not in the nature of a cross demand or mutual debt. Now the *254 40/. must have been received to the plaintiff’s use, in the first instance, and afterwards, appropriated by the defendant to. the extinguishment of the débt accruing for the trouble he had been put to in transacting the business, and had less to do with the consideration of the assumpsit than the evidence has in the present case.
It will be observed, I do not think this evidence admissible as a set-off, but because it was not such. If it were ground of set-off there would be an end of the question; for in that case it should have been pleaded, or at least, notice should have been given. It is on this ground, the counsel for the defendant in error, endeavour to shew the propriety of the decision of the Court below;—and it is for this reason, also, I think the case of Kachlin v. Mulhallon, 2 Dall. 237, is inapplicable. There it was decided, that unliquidated damages could not be set-off, and that the evidence was not admissible, because there zvas a good consideration for the bond, though the defendants had been injured by the subsequent conduct of the plaintiffs. But if the 'matter had affected the consideration of the contract, there is no doubt but by the equitable practice of Pennsylvania, it might have been given in evidence under the plea of payment.
I grant that a mere tort, unconnected with the plaintiff’s conduct as house-keeper, could not have any effect on her claim in that character. But the evidence rejected, went to shew, that during the time she was in the defendant’s service, she gave away various articles belonging to him, without his knowledge, and had them carried away from his house to her daughter in Harrisburg, to be used by the latter as her own. This was a breach, on her part, of the contract implied by the law, that she would behave herself in the execution of her office or trust with integrity and fidelity. 3 Com. 162. It, therefore, appears unjust, that he should be compelled to treat her in the first instance as a person having faithfully executed her trust, and be turned round to an action against her for a breach of her part of the agreement. This unnecessary circuity ought to be avoided., The merits of the defence can be tried in this form, with as much convenience to the parties as in a separate suit, and the judgment, if pleaded with proper averments, would be a bar to another action for the same cause ; and no more danger of surprise can arise from admitting this evidence under the *255 plea of non assumpsit, than happens from evidence of coverture, infancy, accord and satisfaction, and a variety of other matters clearly admissible under that plea. The case of Dunlop v. Speer, 3 Binn. 169, at first view appears not to accord with this doctrine. But that was the case of a man who had the re-payment of money secured to him by the assignment of a judgment. He had also a covenant in an article of agreement for the re-payment of the same money. The Court refused to stay proceedings on the judgment, to give the defendant an opportunity of recovering damages on one of the plaintiff’s covenants in the same article, the breach of which was alleged to be misfeasance in his office of founder in the defendant’s iron-works. That was a quite different case. The defendant, at most, was not in a better situation than if the plaintiff had sued on the covenant to re-pay the money, and it is very clear, that to a declaration in covenant, the defendant cannot plead or give in evidence the breach of another covenant by the plaintiff. The damages expected to be recovered for the misfeasance were a distinct matter, unconnected with the payment of the judgment.
I am aware of a distinction attempted in some of the English decisions since the American revolution, between those cases where the defendant has receiced some benefit from the imperfect or negligent performance of the contract on the part of the plaintiff, and those where he has received none. That distinction, does not seem to be founded in reason; and those decisions not being authority here, I am not disposed to adopt it. But even if those cases could have any weight on the ground of authority, the law on the subject is by no means settled by them. I cannot find any case in the books directly in point, anterior to the period that British precedents ceased to be authority or quotable in the courts of this state. I, therefore, consider the point open to be decided on principle ; and am of opinion, the evidence should have gone to the jury. It will be perceived I have considered this case, as if the form of action were assumpsit, instead of debt. The act of assembly changing the form of action was not intended,. I apprehend, to vary the rules of evidence.
Duncan J.
The action is debt under the act of assembly, founded on a verbal promise for work and labour by the defefidant in error, for the plaintiff in error, as house-keeper, *256 and for goods sold and delivered. The pleas non assumpsit and payment with leave, &c. and non assumpsit infra annos.
The defendant below, either under the general issue, or 'under the plea of payment, with leave, &c. offered to prove that while the plaintiff was in his service for which she demands these wages and payment for the goods sold, she without his knowledge gave various articles belonging to him, and had them sent and carried away from his house to her daughter in Harrisburg, to be used by her as her own. This testimony was rejected by the Court, and to this there is an exception.
I am disposed to consider the case as if notice had been given agreeably to the rules of Court, or as if the specification had been waved; it being the same testimony which was given before arbitrators, and on a trial which had proceeded some length when a juror was withdrawn. This was something more than a mere verbal notice. A communication which might be the subject of altercation, what it really was, and on which each party might put his own interpretation; a loose communication making little impression on the mind would not be a compliance with the rule; but two solemn hearings, in the presence of the party and her counsel, would appear to me to be substantial notice. What the witnesses there swore, in case of their death, might be proved by the notes of the counsel, arbitrators, or judges, verified by oath. A rule of Court intended to prevent fraud and surprise on one party, should never be converted into an instrument of fraud and surprise on the other.
But if there had been a formal,, notice, was the testimony admissible ? It is contended by the plaintiff in error, that under the plea of non assumpsit every thing may be given in evidence which will destroy the plaintiff’s cause of action, as infancy, coverture, release, payment. The reason of this is, either that it disaffirms the contract, or shews performance, or that it ought not to be performed on account of some equity in the defendant. But the evidence offered does neither; it was a matter totally distinct and collateral. Any fraud, failure of consideration in that in which the contract was founded, may be given in evidence in Pennsylvania, as in debt a bond under the plea of payment, &c. The rule of Court makes special provision for this; but fraud in another transaction could not. This was the decision in Jefferies v. Steigleman, decid *257 ed in this Court. The consideration of the note was a quantity of blocks for burr mill-stones ; the evidence offered was a fraudulent misrepresentation of their quality; the case fell within the very words of the rule of Court. If the evidence offered had relation to the contract, to the performance of the work and labour, as if it had stated negligence by the plaintiff in the duties of her station, another question would have been offered to the consideration of the Court.’ If it had been offered to prove, that she took the goods and sold them, then the price for which they were sold might, in an action for money had and received, waving the tort, have been recovered, or a set-off made to that amount; so if it had been stated, that they were taken away without the knowledge of the defendant, the value might have been defalked, or considered as a payment,—that the plaintiff received them on account of her services ; but here the charge is purloining and embezzlement of his goods ; it has some marks of larceny in the manner in which the taking and carrying away are stated; at any rate it was tort; trover or trespass the remedy; a tortious taking, and a wrongful conversion ; the cause of action neither arises ex contractu nor quasi ex contractu, but clearly ex delicto; not from non-feasance but malfeasance. Bull.N. P. 181. A set-off cannot be pleaded to. any action on a tort Whether in trespass or case or replevin, where the avowry is for rent. The attempt to remove the' difficulty by considering the opposite demand as originating in the same transaction, and therefore evidence on the plea of payment, does not remove the difficulty; the right must be reciprocal. An action of trespass or trover and no other Could Heck bring against the woman for these articles. Could she have resisted or diminished the amount of damages, by proof that he was indebted to her for servants wages ? The answer must be in the negative; this would form a decisive objection to its admission in this case. The cases in trover are decisive ; the retainer is confined to liens; where the plaintiff has a lien he may retain in trover as well as in any other action.
In Green and another v. Farmer and another, 4 Burr. 2214, the rule is correctly laid down, that no provision of the statute of set-off extends to goods or other specific things wrongfully detained, and therefore neither courts of law nor equity can make the plaintiff, who sues for such goods, pay first what is uue to the defendant, except-so far as the goods can be *258 considered as a pledge; and then the right of the plaintiff is only to reclaim. On this is founded the whole doctrine of liens, that Courts of late years lean so much to; but to support the lien there must be an express contract or implied from the usage of trade or the manner of dealing between the parties in a particular case. The general question, says Lord Mansfield, is, whether the plaintiff in this action shall be obliged to do justice to the defendants by paying what is due to them before they are entitled to demand the goods from them, and to recover their value in case of refusal.
Natural equity says, the cross demands, should compensate each other, by deducting the lesser from the greater, and that the difference only, is the sum which can be justly due ; but positive law, for the sake of forms of proceeding and convenience of trial, has said, that each must sue and recover separately in separate actions. In Kachlin v. Mulhallon, 2 Dali. 238, payment to debt on bond with leave, &c.; defendants offered to give in evidence the consideration of the bond, and that it was for a tract of land and mills, which the plaintiff sold to the defendant, reserving a right to swell and raise the water so as not to injure the mills; this was rejected. The clear inference from this decision is, that unliquidated damages aris.ing from a covenant connected with a contract, the performance of which is claimed by the action, cannot be given in evidence, either as an equitable defence or by way of set-off,, where such damages sound in tort, and though the remedy of party might be on the covenant.
In the valuable reports of the late Mr. Justice Yeates, 1 Yeates, 571, the case is more fully reported; the Court say that the consequence of admitting such evidence would be the blending of the most discordant subjects, matters arising ex contractu and ex delicto.
So in Switzer v. Garber, 2 Dall. 239, (in the notes,) the vendor had interrupted the vendee in the enjoyment of a tract of land which he sold; the vendee was not allowed to give this interruption in evidence, in an action brought for the recovery of the purchase money, either as an equitable defence or set-off. But I consider the decision in Dunlop’s lessee v. Speer, 3 Binn. 169, as directly settling this question. On an application to the Court to grant equitable relief on a judgment in ejectment against A, to secure the payment of *259 a sum of money due on articles of agreement which were assigned to secure the money to B, and which A covenanted to re-pay on a certain day, the Court refused to stay execution on this judgment, to give A time to obtain a verdict in consequence of tortious acts by B, in breach of his covenants in the same articles, though it seems they would if A’s claim was for money paid, or any other account susceptible of liquidation. The matter desired to be set-off arose on the same articles in which the party claiming the money, had covenanted to serve Speer in the capacity of a founder at his iron-works ; and the deduction claimed was, because he broke his covenant to serve Speer faithfully as a founder, by decoying away the servants of Speer employed in his iron-works. The Chief Justice observes, that the claims set up by the defendants are acts of non-feasance and misfeasance, such as neglect of duty, and decoying away the servants of the defendant employed in his iron-works, which are incapable of liquidation; if it was money or any other matter capable of liquidation there would be a strong ground to grant the motion. Justice Yeates observes, in such a case as this the failure of B to perform his covenants, such as refusing to fulfil the duties of founder, might be given in evidence under the defalcation act, to diminish his claim; but I do not consider, that debts arising ex delicto for torts, such as bad management, as a founder, or the act of enticing away the workmen, can.
It was not a dealing on bond, bill, bargain, promise, account, or the like ; it was a matter of unliquidated damages arising from malfeasance. All dealings between the parties are not subjects of set-off. Could the defendant here have given in evidence a promise of marriage by the plaintiff, and have asked the jury to ascertain the damages on a breach of this promise of marriage, and to strike the balance? Here the action of the defendant must have been tort,—the plea not guilty. But the party is not without his remedy; there is no necessity to introduce this innovation and confusion of all forms of action; of distracting the attention of a jury by a variety of unconnected and discordant matter; Heck had an adequate remedy for the injury ; a substantive and distinct cause of action. I cannot distinguish the demand of wages by a house-keeper from the wages of any other servant; nor can I consider it as any defence by the master, to say you took *260 away and purloined my goods, without my knowledge and against my consent; whether the taking and carrying away would amount to a larceny, or afford an action of trespass ot trover for the wrongful and tortious act. Winchester v. Hackley, 2 Crunch, 343. In an action for money paid and advanced; plea non assumpsit and payment. In the account rendered by the plaintiff, he had credited the defendant for the proceeds of certain flour sold by him as defendant’s factor; but had afterwards charged the defendant-several sums on account of the alleged insolvency of some of the purchasers of the flour. The defendant to repel this evidence, offered to prove that the sums so charged to the defendant, were lost by the mismanagement and misconduct of the plaintiff, in having made sales to persons known to him to be unworthy of credit; but the Circuit Court for the district of Virginia, refused to permit such proof to be made, being of opinion, that such misconduct was properly to be examined into in a suit for that purpose. In an action by the assignee of a bankrupt, as supercargo of a ship, the defendant cannot set-off a claim against the bankrupt for not keeping the vessel insured according to his undertaking, beingunliquidated damages. Brown v. Cumming, 2 Caines, 33. Now all these cases respected the act of the party in the transaction on which the assumpsit was founded.
I am therefore of opinion, the testimony was properly rejected; but differing from the majority of the Court, the judgment must be reversed.
Judgment reversed, and a venire facias de novo awarded.