The opinion of the court was delivered by
Gibson, J.
Robert M‘Cord, by his will, directed his real and personal estate to be sold, and distributed in a particular way by his executors; one of whom died intestate before any sale was made. The survivor sold the tract of land for which this ejectment is brought, at public sale, to James Armstrong and John Sawyer, for 5,990 dollars; a great part of which was paid. The surviving executor also died intestate, and this action is brought by Innis Green, the administrator, de bonis non, with the will annexed, to *15 recover the possession of the land, or to compel the defendants to pay the residue of the purchase money. At the trial, the plaintiff showed title in Robert M'Cord, the testator — his will — a patent from the state to the two executors, in trust for those beneficially interested in the land under the will, and the letters of administration; and there rested. The defendants, among other things, offered to prove, that Green, the plaintiff, by means of a mill dam erected on his own land, at the time of the sale, and continued ever since, had overflowed a material and valuable part of the land in question; and had deprived the defendants of the benefit of the water power of Stony Creek, which flows over it: and this evidence being rejected, is made a ground of error here. As to this point, it is impossible to distinguish the case at bar, from Kachlein v. Mulhollen, 2 Dall. 237. 1 Yeates, 571, S. C.
It is clear that the defendants claim, being for unliquidated damages, cannot be urged as a set off; nor can it as an equitable defence, because it had nothing to do with the consideration of the contract of sale. But this suit is not founded on the contract, but on the title of the testator, and the sale, therefore, is relied on only by the defendant. In Heck v. Shener, 4 Serg. & Rawle, 249, the action was •directly founded on a promise, and the evidence of personal misconduct of the plaintiff was held admissible only on the ground of its going to the consideration, and thereby affecting his title to sue. But there is another decisive objection. Had this suit been instituted by the executor who made the sale, this matter could not have been urged against him, because as the nuisance existed at the time of the sale, Armstrong and Sawyer purchased with their eyes open; and could not pretend there was any thing like deceit on the part of the seller: they would be left to their remedy against the wrong-doer. How then can they set the matter up against the wrong-doer, (taking him to be such,) who comes on the record as a plaintiff, in place of the executor, suing in auter droit. The remedy against him is still the same, and to be prosecuted in the same way. To suffer the administrator to satisfy a claim for damages which is personal to himself, out of the funds of the estate, would, if the assets were insufficient, prove injurious to the creditors; and would in any event prove so to the legatees. It is for this reason, that a debt due by an executor, cannot be set off against a debt due by his testator.
After the plaintiff had opened his rebutting evidence, he offered Mr. Fisher, who was of counsel in the cause, to prove what had been sworn on a former trial by a witness since deceased. On being examined as to the state of his recollection, Mr. Fisher testified,that “ fi’om having been consulted before the suit was instituted, and having directed to be done, what the witness in the former trial swore was done; as well from frequently having recurred to his notes of the witness’s testimony, as from conversations with him beforfe the trial came on; he had a perfect recollection of what the witness swore: that he would not however pretend to say with *16 out a previous knowledge of all these facts, wbat the witness did or did not swear: that he is in the habit of taking down the very words of a witness, and not the substance of his testimony; and that to the best of his knowledge, his notes contain every word said by the witness on the occasion.” Mr. Fisher added, “ that conversant as he was with the cause, without frequently recurring to his notes, he would not undertake to state every word said by the witness, but that the material part of what he had said he could state without recurring to his notes.” The defendants then objected to Mr, Fisher’s competency to prove the matters proposed; but the court admitted him and sealed a bill of exceptions. I confess I cannot see any reason for the rule stated in Mr Phillipps’s treatise, that a person called to prove what a deceased witness had said) must undertake to repeat his very words, and not merely to swear to their effect. The rule, applied with that degree of strictness, would be altogether useless in practice; for there is no man, be his powers of recollection what they may, who could, in one case picked out of ten thousand, be qualified to give such evidence: and if he should undertake to swear positively to the very words, the jury ought on that account alone to disbelieve him. The reason assigned, that the jury and not the witness is to judge of the effect, is more plausible than sound. It is a good general rule that a witness is not to give his impressions, but to state the facts from which he received them, and thus leave the jury to draw their own conclusions; and wherever the facts can be stated, it is not to be departed from. But every man must judge of external objects according to the impression they make on his senses; and after all, when we, come to speak of the most simple fact which we have witnessed, we are necessarily guided by our impressions. There are cases where a single impression is made by induction from a number of others; as, where we judge whether a man is actuated by passion, we are determined by the expression of his countenance, the tone of his voice, his gestures, and a variety of other matters: yet a witness, speaking of such a subject of inquiry, would be permitted directly to say whether the man was angry or not. I trust this will not be considered as refining too much, when it is considered that the subtlety is in the subject, and not in the manner of treating it. I take it, that wherever the facts from which a witness received an impression are too evanescent in their nature to be recollected, or are too complicated to be separated and distinctly narrated, Ris impressions from these facts becomes evidence; and this on the ■ground that it is the best evidence of which the nature of the case is susceptible. Now the meaning of a witness often depends not much less on his emphasis, gestures, and even the expression of his countenance, than on the particular words he utters; and the superior value of viva voce evidence in the presence of- the jury, depends altogether on this: yet no one will pretend that a bystander who is unable minutely to describe all these, may not be heard. The truth is, that evidence of what a deceased witness said, being *17 inferior in its nature to a personal examination before the jury, is admissible only from necessity and on the ground that better evidence does not remain behind, the jury being left to form their own judgment of the accuracy of the narration. I cannot therefore see why the same necessity which opens the way for secondary evidence of the very words of a deceased witness, should not open the way also for the substance of his testimony when his very words cannot be recollected; or discover the policy of a rule which should shut out the little light that is left, when it is all that is left, merely because it may not be sufficient to remove every thing like obscurity. But even where written notes of the evidence of a deceased witness are produced, it is sufficient to prove by the person who made them that they contain the true substance of what was said. Miles v. O’Hara, 4 Finn. 108. For these reasons, I am of opinion that Mr. Fisher, was competent to testify to what the witness had sworn. It seems, however, singular that instead of trusting to Mr. Fisher’s recollection, the plaintiff did not offer his notes in evidence, against which, when properly authenticated, there could be no sort of objection.
Exceptions are to charge. having given evidence of a tender of the residue of the purchase money, which was refused because the tender was of notes of the Branch Bank of Harrisburg, although it then paid its notes in specie; requested the court to direct the jury that in default of payment at the day, a substantial offer of payment after the day would prevent the plaintiff from instituting an action until he should have made a demand; which the court refused. Now here there was no evidence of a legal tender to raise the question submilted; for it was not pretended that the plaintiff refused to accept of the money tendered on any other ground, than that it was in bank notes and not in specie; and I know of no substantial tender but a legal tender. But if this were otherwise, it would not avail the defendants; for a plaintiff having a direct cause of action, may prosecute it after a tender without any further demand, although at the risk of the costs, if the defendant should plead the tender and bring the money into court; which last might have been done here, even perhaps without pleading.
The defendants further prayed the direction of the court, that the plaintiff as administrator with the will annexed, could not maintain this action on the contract, after delivery of possession and receipt of a considerable part of the purchase money; or on the title given in evidence. To this it is sufficient to answer, that by the act of the 12th March, 1800, an administrator with the will annexed is, for every purpose connected with the execution of the will, put exactly in the place of the executor who preceded him; and clothed with all his rights, and invested with all his capacities of collecting debts, maintaining actions, and selling real estate pursuant to the *18 will. The plaintiff was the person to receive the purchase money, or if the contract were rescinded, to have possession of the land for the purpose of selling it; and it is therefore difficult to discover why he might not maintain this suit. The taking of a patent in the names of the executors, in trust for those beneficially enlitled under the will, can make no difference. Let the state of the legal title in other respects be what it may, the plaintiff succeeded to all their rights as trustees under the will; which is all that is requisite to enable him to sustain this action.
The defendants still further prayed the court to direct the jury, that as by the terms of the will certain legacies are directed to be paid from the proceeds of the sale of the real estate, releases from those legatees were necessary to perfect the title of the vendees; which was refused: and this is the last assignment of error. On an inspection of the will, we are of opinion that none of the legacies are charged on the land which is merely directed to be sold, and the proceeds to be distributed in a particular way. There is no ground therefore to argue, that the vendee was to see to the application of the purchase money. The plaintiffs in error have thus failed on and the is affirmed.
Judgment affirmed.