CHARLES U. BRADY v. TEMPE PRICE.

In a suit by an overseer for his wages, the defendant may plead in reconven-
tion, damages caused by the wilful injury of defendant's slaves by the plain-
tiff, during his employment as overseer.

An overseer is not justified in shooting with small shot a slave of his employer,
who has refused to submit to chastisement, and is making off and refuses to
stop when ordered; and he is liable to his employer for any injury done to a
slave by such wrongful act.

Appeal from San Augustine. Tried below before the Hon.
Archibald W. O. Hicks.

Suit by the appellant against the appellee for three hundred
dollars, on a contract of hiring of the former by the latter,
as overseer, for the year 1854. Plea to the effect that plain-
tiff, in the month of April, 1854, wilfully disabled and rendered
valueless, and a charge upon defendant for life, a slave Miles,
the property of defendant, then under the charge of plaintiff
as overseer as aforesaid, to the damage of plaintiff a thousand
dollars, which defendant claimed in reconvention. Plaintiff
excepted to the plea in reconvention, and the exception was
overruled. It appeared from the evidence that defendant
hired plaintiff for the year 1854, to oversee her plantation, for
which she was to pay him $300. There being ten or twelve
man slaves on the plantation, and no white person except the
plaintiff, witness, the son-in-law of the defendant, who, as
agent for defendant, put the plaintiff in charge of the planta-
tion, told plaintiff he might have some difficulty in managing
them, and in case he should, if he would send word to witness
or to A. G. or B. F. Price, (sons of defendant,) all of whom
lived within a few miles, some of them would come and assist
him. Plaintiff said he thought he could manage them himself.
It was proved by a witness that he saw the plaintiff about ten

minutes after the first difficulty between plaintiff and the slave Miles, and that plaintiff then had some marks of blood on his throat. The same witnesss, and another, proved that the plaintiff made the following statement of the whole matter: That the said plaintiff was in the horse lot on defendant's plantation, and that the said negro Miles and several other negroes of defendant were there. Plaintiff told one of said other negroes to take a yoke of oxen and do something; that the said Miles spoke up and said something impudent; that plaintiff told said Miles to hush and go about his business; that said Miles again said something impudent in reply, and said plaintiff then caught up a part of a fence-rail and struck at said negro Miles, but did not get a fair lick at him, or he would have knocked him down; that the part of the rail he had in his hand struck the gate or the side of the fence, or he would have been able to knock said negro down; that plaintiff and the negro Miles then clinched and came to the ground; that the negro Miles choked the plaintiff; that the negro Miles was then pulled off plaintiff by the other negroes, and when plaintiff got up the negro Miles had gone; that the negro Miles, in some short time afterwards, got his horse and went up into the field to ploughing; that plaintiff, in some hour or two afterwards, got his gun and went up into the field, but when he got there he found said negro's horse tied, and said negro gone; that, on the next Monday morning, after the occurrences first stated, the plaintiff heard that the negro Miles was up in the field at work. Plaintiff then took his double-barrelled shot-gun, having first drawn out the load of buckshot and loaded both barrels with squirrel shot, and went up in the field where said negro Miles and other negroes belonging to defendant were ploughing. Plaintiff stopped at the end of a row toward which said Miles was coming.' When said Miles reached the end of the row plaintiff ordered him to stop. Said Miles did not do so, but turned his horse round and started back on the row he was ploughing. Plaintiff fol-

lowed said negro until he met another negro of defendant's who was ploughing in a direction opposite to that in which said negro Miles was going. Plaintiff told said other negro to take said Miles' horse. Said other negro did not do so, and about that time Miles dropped his plough-lines and ran ahead of his horse, when plaintiff fired on him. Said negro ran on and plaintiff followed him, and he fired on him again, hitting him both times ; that said negro ran on some fifty yards, when plaintiff overtook him. When said negro turned round he had a knife in his hand. Plaintiff drew his knife and told the negro to put up his knife, and said negro immediately shut up his knife and put it in his pocket. Plaintiff then told said Miles to get his horse and go on to the house. Miles took his horse and started towards the house, plaintiff following him. On the way to the house plaintiff stopped and loaded his gun, and put in such a load as, if it had hit the negro Miles, would have stopped him from ever running again. When said Miles approached the horse-lot, having got somewhat in advance of plaintiff, he slipped around the corn-crib and ran away.

It was proved by a physician that there were fifteen to twenty-five (other witnesses said his back was full of shot-holes,) holes in Miles' back, which appeared to have been made with large squirrel shot ; the shot had gone so deep that witness did not attempt to extract them. It was also proved that Miles had been previously healthy and able-bodied, and worth about $1,000 ; but that since that time he had been unable to work and was of little or no value.

The plaintiff attempted to prove that Miles was impudent, malicious and rebellious, and there was some evidence to that effect ; but there was other evidence tending to the conclusion that he was merely self-willed.

In the same month of April, a very short time after defendant heard what had occurred, she discharged the plaintiff.

The Court instructed the jury, without request, as follows : When a slave is placed under an overseer, the overseer has

the right to exact obedience to his lawful commands in and about the business he is employed to superintend, and to use such restraint, coercion and chastisement as is necessary to make the slave obedient to his orders, not extending to life or limb, but has no right to inflict serious bodily harm, endangering life, for mere disobedience to his orders. The right to life and limbs is an inherent right existing by the laws of Nature, and which the law of the land does not pretend to take from the slave, so long as he does not become an aggressor by acts of violence. But if a slave refuse obedience to the lawful commands of his overseer, and manifest an intention by an act committed, or an act then attempted to be committed, to inflict an injury on the overseer, the overseer has the right to defend himself and prevent such injury, and, also, to inflict chastisement for such act of insubordination. But an overseer has no right to inflict greater chastisement than the circumstances demand, or to inflict cruel or unnecessary punishment to gratify his animosity, passion and revenge. If he do so, he is liable to the owner of the negro for any injury inflicted upon the slave by which the owner has sustained damage.

Verdict and judgment for the defendant for $516 67. Motion for new trial overruled, &c.

*H. M. Kinsey*, for appellant, argued that the exception to the plea in reconvention should have been sustained, and that the plaintiff was justified in shooting the slave with small shot, when other means had failed to reduce him to obedience.

*Henderson & Jones*, for appellee, cited 3 Ired. L. R. 513.

WHEELER, J. There was no error in overruling the exceptions to the plea in reconvention. The suit was to recover the wages of the plaintiff as overseer. The plea avers that, by reason of the unfitness of the plaintiff for the employment, and his misconduct in the performance of it, the defendant had sustained

the injury complained of. It comes, therefore, within the rule, as being incidental to, and growing out of, the subject matter of the suit. Even at common law, in an action for work and labor, or goods sold, though the contract was at a certain price, the defendant may prove, under the general issue, in reduction of the price, that the work was improperly done. (1 Chit. Pl. 569.) In an action to recover compensation for services as a housekeeper, and for goods sold, it was held that evidence that the plaintiff was guilty of malfeasance, and had embezzled the goods of the defendant, was admissible, under the plea of non-assumpsit, to defeat the action. (4 Serg. & Rawle, 249.) With us the defendant may plead specially any matter of defence which goes to defeat the action; and he may plead in reconvention unliquidated damages necessarily connected with, and growing out of, the original cause of action. On the authority of repeated decisions of this Court, the ruling of the Court upon the exceptions to the plea, was correct. (Castro v. Gentily, 11 Tex. R. 28 ; Sterrett v. Houston. 14 Tex. R. 153.)

The charge of the Court was undoubtedly correct. The plaintiff had a right to chastise the slave for his misconduct, in a proper manner. But when he was not opposing forcible resistance offensively, he had no right to assault him with a deadly weapon, in a manner likely to produce death or great bodily harm, by way of punishment, or to compel him to submit to chastisement. He had no right to shoot him down for the purpose of stopping him when retreating against his orders. The case of Copeland v. Parker, decided by the Supreme Court of North Carolina, (3 Iredell, 513,) is in point. The defendant, an overseer, was about to whip the slave for leaving his work without permission. The slave started off; the defendant ordered him to stop; but the slave quickened his pace. The defendant shot him with a shot gun loaded with squirrel shot, and lodged the load in his back and thigh, which disabled him for work for some time. The Court charged that a

gun was not a fit instrument for chastisement, and that an over-
seer had no right to shoot a negro who refused to stop when
ordered, and was in the act of making off.  The plaintiff had
a verdict judgment for damages for the injury sustained ; and
on appeal the Supreme Court affirmed the judgment ; holding
the charge unexceptionable.

If the plaintiff was unable to enforce due subordination, by
the use of any reasonable and proper means ; or without re-
sorting to the use of deadly weapons, he ought to have applied
for assistance, as he had been instructed to do by the defend-
ant's agent.  He committed a wrongful act, for the conse-
quences of which he was responsible to the owner of the slave.

The evidence fully supported the plea and warranted the
verdict ; and the judgment must be affirmed.

Judgment affirmed.