Parker, C. J.,
delivered the opinion of the Court.
The indenture, under which the plaintiff claims a right to the property replevied, was intended to be tripartite between L * 556 ] * Holt, Hastings, and such other creditors of Holt as should sign and seal the same. It was executed only by Holt and Hastings ; and the first objection made to the verdict is, that it is an incomplete instrument, and ought not to have been received in evidence.
Had Hastings been constituted merely a trustee by the instrument, *449 without any interest in the property himself, the objection would be valid; for as none of the creditors became parties, there would have been no cestui qui trust; and the trust-estate or right in Hastings would have wholly failed. But Hastings was himself a creditor, and one for whose use the trust was principally created, as he was first to be provided for out of the funds, after the debts due to the United States were paid. His signature, therefore, must be considered as having a double effect, both as trustee and as creditor; and thus the deed is formally good, there being no legal necessity, if the transactions were bona fide, that Hastings should lose his security, because other creditors refused to come into the measure.
Whether the assignment is fraudulent, is therefore the only question to be considered; and as the question is referred to us as matter of law, we must determine whether the facts and circumstances proved in the case necessarily prove fraud. For if it be mere matter of inference from those circumstances, whether the assignment be fraudulent or not, the question should have been left to the jury, and not referred to the Court.
It appears in the case that Holt was indebted to Hastings, at the time of the assignment, to the amount of TOO dollars, at least; and that Hastings was then under legal liability for Holt to a much larger amount. He had actually commenced an attachment upon the property, which was afterwards assigned, and the whole was in the custody of the officer, who made that attachment. Hastings was then in a situation to receive the property, by the assent of Holt, in satisfaction of his debt, or as a pledge to secure it; it being perfectly competent to Holt, although insolvent, to pay or secure his debt to Hastings alone, if he saw fit.
* If the property assigned did not exceed the amount [ * 557 ] of Hastings’s demands for debt and liability, so much as to furnish presumption of a fraudulent intent to conceal it from other creditors, the assignment, whether absolute or conditional, would be valid. In this case there was such excess, that if the assignment had purported to be for the benefit of Hastings alone, such a presumption might have been warranted. But as provision was made for another creditor, whose debt alone, if it had stood first, would have consumed the whole amount of the property, and yet have been but partly satisfied; and as provision was likewise made for other creditors, if they chose, to become parties, the presumption of fraud is rebutted. At least, fraud under such circumstances cannot be considered by the Court as established. With respect to possession under the assignment, and notoriety as to the change of property, the facts reported leave the case without suspicion
*450 But the actual demand of Hastings, when adjusted between him and Holt, turned out to be considerably less than the sum assumed in the deed as due to him, for which he had a right to retain out of the proceeds. If this were known at the time, and the debt was enlarged in order to secure to Hastings a greater proportion of the proceeds than honestly belonged to him, this circumstance would afford strong evidence of fraud. But the liabilities existing at the time of the assignment were probably taken as the basis of calculation ; and the reduction afterwards, in consequence of Holt’s paying some of the debts himself, would have been a sufficient answer to the suggestion.
If a creditor takes a larger amount of property to secure himself, than turns out to be necessary; and this by mistake, and without fraudulent design, his security for what is actually due will not be vitiated; but he will be answerable as trustee for the surplus.
If in such case the assignment was bona fide, as the debtor had a legal right so to dispose of his property, we do not see [ * 558 ] how the possession of the assignee can be interrupted * by an officer, in behalf of any other creditor. In the case supposed, all the goods are rightfully transferred; and it would seem impossible to sever a part of them, as subject to attachment. For it will be always difficult to ascertain, whether by such act the right of the creditor, intended to be secured, is not impaired. The trustee process is the proper remedy in such case, and the creditors, who are not favored by the debtor, will generally be as secure, for such portion of the funds as may. exceed the debt for which they are assigned, as they could be by an attachment. Where the assignment is fraudulent, as in the case of Burlingame vs. Bell, 16 Mass. Rep. 318, the creditors may proceed, either by the trustee process, or the ordinary mode of attachment.
In the case before us, the plaintiff in this suit was summoned by Mr. Hinckley, as the trustee of Holt, after the assignment, and before the attachment made by the defendant in this suit. It appears, by the issue of this process, that the goods assigned fell much short in value of the actual demand of the plaintiff against Holt, together with the debt of Hinckley, the plaintiff in the trustee process. The plaintiff was adjudged trustee in that suit, and judgment was rendered against Holt, the principal, and the plaintiff as trustee, for the amount of 13,554 dollars, 8 cents, for which amount execution issued against the principal and trustee.
It was suggested that this transaction was collusive, and that the plaintiff ought to have resisted Hinckley’s suit. But the debt to Hinckley appears to have been bona fide; and if, by virtue of any agreement between him and the plaintiff, the latter was content to *451 suffer judgment to go by default, the rights of other creditors do not seem to be affected. For Hinckley had obtained a lien before any of them ; and it is not pretended that there was property enough to satisfy his whole debt; and the trustee would be answerable on execution, only for so much of the property as exceeded his own demands.
* That the plaintiff aided Hinckley in obtaining security, [ * 559 ] by causing an attachment in the form of a trustee process to be served, cannot be of importance; Hinckley being an actual creditor, and it being the intention of the assignment to secure him ; which could not be done by reason of his absence. Hinckley assented to the suit, and this ratified the act, which might at first have been without authority.
We do not perceive how the rights of the plaintiff can be affected by any supposed defect or error in the judgment, which Hinckley obtained against Holt; as, if it were fraudulently obtained, he does not appear to be privy to the fraud. The amendment of the declaration was allowed by the Court of Common Pleas, and by the amendment the nature of the demand was not changed, nor was the demand enlarged. Probably the note for 18,000 dollars was given to cover all unadjusted demands, to enable Hinckley to commence his suit; and the substitution of other notes, which were part of the consideration of this, was thought might reasonably be allowed as an amendment. But whether the Court of Common Pleas did light in allowing the amendment, or not, seems to be immaterial in this case between these parties; as Hastings had no control over the action between Hinckley and Holt, any further than related to his own character as trustee. He could not have prevented the amendment, and indeed could not be heard on the subject.

Judgment on the verdict.