LEWIS HOWELL *et al.*, plaintiffs in error, *v.* EDWARD EDGAR *et al.*, defendants in error.

*Error to Peoria.*

The right of a failing debtor to prefer a creditor, by deed of assignment, is too firmly settled by the authorities, to be questioned, if it be fairly made, without onerous conditions to the creditor, or provisions for his own advancement, and there be no bankrupt or attachment laws abridging the right.

An assignment of the estate of a debtor to a trustee, for the benefit of his creditors, which provides that all creditors wishing to become parties to the assignment, shall, within twelve months from the date thereof, affix their signatures thereto; and that the debtor shall not be held liable to pay to any creditors who may sign the same, any deficiency that shall remain unsatisfied of their respective demands, is fraudulent and void.

THIS cause was heard in the Court below, at the April term, 1840, before the Hon. Thomas Ford. Judgment was rendered for the plaintiffs for $751.83 damages, and costs of suit. The facts are generally stated in the opinion of the Court. The clauses in the assignment upon which the question in this case arises, are as follows :

"All creditors wishing to become parties to this assignment, shall, within twelve months from the date hereof, affix their signatures hereto," &c.; " and upon this condition, that said Shewalter shall not be held liable to pay any deficiency, in law or equity, that shall remain unsatisfied of their respective demands."

S. T. LOGAN, for the plaintiffs in error, cited 4 Wash. 232 ; 11 Wend. 195 ; 3 Price 6 ; 15 Johns. 571 ; 2 Scam. 36.

O. PETERS, for the defendants in error :

The deed of assignment, by its provisions, is rendered fraudulent and void.

The condition in the deed, that the creditors shall each be barred from any further claim, after receiving his dividend, is against the policy of the law, as well as against the provisions of our statute of frauds and perjuries, which declares all sales of property made for the purpose of hindering, delaying, or defrauding creditors, to be absolutely void. R. L. 313 ; Gale's Stat. 315.

The defendants rely on the following authorities as presenting a full view of the questions, and a full review of the leading decisions : Grover *v.* Wakeman, 11 Wend. 187 ; Ames *v.* Blunt, 5 Paige 13 ; Atkinson *et al. v.* Jordan *et al.*, 5 Ohio 293.

SCATES, Justice, delivered the opinion of the Court :

Edgar and Forsyth sued out a writ of *foreign attachment* against Shewalter and McCrory, which was served upon Lewis Howell, with others, as garnishees, and having obtained judgment against Shewalter and McCrory, for $765.51 debt, and cost of suit, a con-

ditional judgment was taken against Howell, as garnishee, and interrogatories filed. The note sued on was due October 10th, 1837.

Howell answered, that on May 21st, 1838, Shewalter conveyed to him and one George B. Parker, by deed, duly recorded, certain real estate, personal property, stock in trade, debts, book accounts, and effects, in trust, to sell, and after paying the expenses of the trust, then to pay certain creditors, named in schedule number one, their whole debts. If there should be a surplus, then to pay certain other creditors, including the plaintiffs, mentioned in schedule numbered two, the whole amount of their debts, if the estate should be sufficient, but if not, then *pro rata;* and should there be any surplus, after retaining a compensation for their trouble, to pay it over to the grantor and his heirs. The deed further provides, that all creditors wishing to become parties to the deed, shall do so in person, or by legal representative, within twelve months from its date. The condition of the deed is, that the said Jacob D. Shewalter shall not be held liable, in law or equity, to pay any deficiency that shall remain unsatisfied of their respective demands. It further provides, that all creditors who shall not become parties to the deed, within twelve months, shall be debarred the right of claiming dividends under this assignment.

The garnishee further answered, that he had received, under this assignment, a sum of money exceeding the plaintiffs' demand, and submitted to the Court, whether he was liable to the plaintiffs below, who had not signed the deed. Judgment was rendered for the plaintiffs below, which is assigned for error.

The counsel for the parties agree, that the only question submitted to the Court is, whether the deed is fraudulent and void in law, by reason of the clause debarring all creditors the right of claiming dividends under it, unless they should sign it, by which Shewalter would be released from all liability for any deficiency.

Fraud, not apparent upon the face of the deed or contract, arising from motives referable to the mind of the party, evidenced by his situation, and the circumstances under which the agreement is made, is a question of fact for the jury. But it becomes a question of law, for the determination of the Court, when the intention and provisions expressed in the agreement, depend, for their validity, upon their consonance, or repugnance to the principles of law and equity. But when, to this latter, are added extrinsic circumstances and motives, it becomes a mixed question of law and fact, for the determination of a jury, under the instructions of the Court.

The question before us arises upon the face of the deed: are its provisions consonant to the principles of law, and will it enforce them?

By the statute of frauds and perjuries, all deeds, contracts, and facts in the case. The jury, having found that there was no fraud,

agreements, &c., hindering, disturbing, and delaying creditors, are declared null and void.

There is a distinction laid down, between bonds at the common law, and statutory bonds. According to a saying of Lord Hobart, " The statute is like a tyrant, where he comes he makes all void; but the common law, is like a nursing father, and makes void only that part where the fault is, and preserves the rest." (1)  " But the common law doth divide according to common reason, and having made that void which is against law, lets the rest stand as it is." (2) On the other hand, in Fermor's case, (3) it is said, " The common law doth so abhor fraud and covin, that all acts, as well judicial as others, and which, of themselves, are just and lawful, yet being mixed with fraud and deceit, are in judgment of law wrongful and unlawful." Ch. J. Montagu lays down the same doctrine very strongly. " Covin," says he, " may be where the title is good, and the title shall not give benefit to him that has it, by reason of the covin; for the mixture of the good and evil together makes the whole bad; the truth is obscured by the falsehood; and the virtue drowned in the vice." (4)

The Court, in the case of Hyslop *v.* Clarke, (5) seems to think that the better opinion is, that, at the common law, a deed fraudulent in part is altogether void. I think the better reason is found in the former opinion, in making void only so much as is contrary to law. If this deed be fraudulent, it is void in *toto*, and the assignees, even if creditors, could derive no benefit from its provisions.

The right of a failing debtor to prefer a creditor, by deed of assignment, is too firmly settled by the authorities to be questioned, if it be fairly made, without onerous conditions to the creditor, or provisions for his own advancement, and there be no bankrupt or attachment laws abridging the right; (6) and it is now settled upon as firm a basis as deeds of composition.

But instead of relying upon fair deeds of composition, or assignments for the benefit of one, or more, or all the creditors alike, failing debtors began to make assignments, annnexing conditions more or less onerous to the creditors, and favorable to themselves; and no doubt numberless frauds would have been the consequence of these voluntary assignments, with conditions of release, if the courts had not manifested a ceaseless vigilance to detect and defeat " the multiplied attempts that are unceasingly made by insolvents to cover their property from their creditors, by every shift and contrivance which human ingenuity can devise," so aptly described by the Court, in Hyslop *v.* Clarke. (7)

(1) 1 Mod. 35.                    (2) 14 Hen. 8, fol. 15; Hob. 14; 9 Peters 679.
(3) Coke 78.            (4) Plowd. 54.            (5) 14 Johns. 464.
(6) 8 T. R. 520; 4 T. R. 166; 2 Vernon 261; 2 Pick. 129; 5 T. R. 420; 17 Mass. 551; 5 Mass. 42; 11 Wend. 188; 12 Peters 178; 14 Johns. 458; 15 Johns. 571; 5 Paige 13; 6 Price 6.                    (7) 14 Johns. 464.

In the case before us, there is no evidence of fraud in fact, or any purpose to deceive, other than what appears upon the face of the deed, as disclosed in the answer of the garnishee. There is a great contrariety of decisions upon such a condition of release as is contained in this assignment. They are irreconcileable, and it is still *quæstio vexata.*

The English cases are not numerous, and have generally been upon composition deeds, to which the creditors were parties, or more or less affected by considerations growing out of their bankrupt system. (1)

While I admit that the question did arise in King *v.* Watson, (2) in which the deed was held good, yet the decision seems to have been unsustained by any authority; and in Grover *v.* Wakeman, (3) it was questioned by the Court as "a very bald one, and is entitled to very little weight."

In Hatch *v.* Smith *et al.*, (4) the deed contained a stipulation for a release; but, although the deed was sustained, the question was involved with another, arising under a statute of that State, under which the proceeding was instituted, to declare the assignees trustees of the assigned effects. In the cases of Hastings *v.* Baldwin, (5) Widgery *et al. v.* Haskell, (6) and Ingraham *v.* Geyer, (7) the question was involved with the same, or other questions. In some of them the deed was sustained, and in others it was held void.

The question is not settled in Massachusetts, notwithstanding these decisions. Mr. Justice Story, in Halsey *v.* Whitney, (8) Mr. Justice Sutherland, in Grover *v.* Wakeman, Ch. J. Parker, in Borden *v.* Sumner, (9) and Judge Ware, of the District Court of Maine, in the case of G. and I. Lord, libellants, *v.* Brig Watchman, (10) all considered the question as still open in Massachusetts; the latter after reviewing all the decisions in that State.

In Pennsylvania such deeds have been sustained. It was so ruled in Lippincott *v.* Barker, (11) though Breckenridge, Justice, dissented, and the Court put itself upon the particular circumstances of that case. (12) The legislature of Pennsylvania have imposed some restrictions upon such assignments; and subsequent decisions have taken a firm stand in favor of creditors. (13)

In the case of Brashear *v.* West *et al.*, (14) the decision sustained a similar clause, in a deed, to the one under consideration; but the deed was made in Pennsylvania, and the decisions in that State have sustained such deeds, under their statute of frauds. The Supreme Court of the United States adopts the decisions of the State under whose laws the contract was made, as the *lex loci*

(1) 11 Wend. 198; 4 T. R. 166; 8 T. R. 521.
(2) 6 Price 6.        (5) 17 Mass. 551.       (8) 4 Mason 229.
(3) 11 Wend. 198.     (6) 5 Mass. 144.       (9) 4 Pick. 265.
(4) 5 Mass. 42.       (7) 13 Mass. 146.     (10) Ware 232.
(11) 2 Binn. 174.     (12) *Vide,* also, Bond *v.* Smith, 4 Dallas 76.
(13) 2 Kent's Com. 536, note d.         (14) 7 Peters 614.

of the contract, and also their interpretations of their local statutes. The Court, after citing the cases in 2 Binn. 174, and 4 Wash. 232, remarks, " We are informed of no contrary decision in the State of Pennsylvania, and must consider it as the settled construction of their statute." Yet, from the intimation thrown out, their opinion, upon general principles, seems to have inclined to a contrary decision ; for they say, "Yet we are far from being satisfied, that, upon general principles, such a deed ought to be sustained."

In many of the cases in which this or similar clauses have been holden good, it seems that the courts came to that conclusion with doubt and hesitation, and would have inclined to a contrary decision, if the question had been new. (1)

There are many decisions declaring them fraudulent 'and void, and which, in my mind, are based upon better reason, more justice, and sounder principles. And, while there are few, or no estates, depending upon the validity of such assignments, I think it our duty to lay down the rule that should govern us, at as early a day as possible, that none may be deceived, either in making, or trusting to such a title.

While the debtor is indulged in those moral obligations, he may feel to prefer one creditor to another, I would not be willing to see those creditors, who might be postponed, compelled, against their will, to release their debts, or the greater part of them, to save a portion from a bankrupt estate.

Shewalter says to his creditors, "I will pay some of you all, if I have enough ; if there be a surplus, I will pay the rest of you *pro rata,* provided you will, within twelve months, release me from all liability for any deficiency."

There is no schedule, or valuation of the property, or of the debts, except a few lots of land. How much will the estate pay ? Has he surrendered all his property ? There may be sufficient to pay all the preferred creditors ; there may be a surplus.

As the proportion of the property to the debts does not appear, we are driven to speculation upon the probable amount the estate will pay. Suppose it to be ten per cent. Is it reasonable to ask the creditors to release all claim upon his future industry and acquisitions, to secure a tithe out of his present estate ? To sustain this deed, would enable the debtor to say to his creditors, You have augmented my estate by giving me your property on credit, but you shall have none of it, unless you will take, in full discharge, what may be left, after I satisfy such as I prefer. I cannot comprehend the justice of the principle, that places within the power of a failing debtor, such control over the rights of the creditor, as to coerce him to release his debt, or be debarred from sharing in the distribution of that property, which his own substance has contributed to aug-

(1) 4 Mason 320.

ment. And, I think, Senator Tracy, in Grover *v.* Wakeman, very justly remarks, that " the right, either legal or moral, of a debtor to provide in his assignment, for a release from debts which he has not paid, stands on no better grounds, than a right to secure from his creditors a return of a certain per centage on the property dis-tributed, or an engagement that his creditors shall give him a new credit."

In the case of Grover *v.* Wakeman, (1) the cases are reviewed, and ably discussed by the Court; and, by a majority of the Court, the deed was held fraudulent and void. Similar decisions were made in the cases of Hyslop *v.* Clarke, (2) and Ames *v.* Blunt. (3)

Many of the cases that would seem to weaken these authorities, as I before remarked, involve other questions, and others are dis-tinguishable. Nor is it unimportant to note a distinction between these assignments, and composition deeds, to which the creditors voluntarily become parties. The case of Clark *et al. v.* White, (4) was of the latter description. The debtor filed his bill to enforce a specific performance, by delivering up certain notes which were discharged by the composition of the parties. The defend-ants not showing fraud in obtaining the deed, the Court enforced it; but said that any underhand agreement would be fraudulent and void. (5)

There was no stipulation for a release in the case of Nunn *et al. v.* Wilsmore. (6) And the fact that the principal part of the pro-perty in question was the wife's fortune, to whose use the surplus was reserved, seems to have had great weight with the Court.

Hungerford *v.* Earl, (7) was on a voluntary settlement, in trust to pay debts, and raise portions for grautor's children, and £50 per annum for himself. Yet the deed was holden void, as to creditors, whose debts were contracted twelve years afterwards. The grantor remained in possession, which must have had great weight with the Court; for otherwise, it would seem that the prin-ciple is extended a great way. After paying seventy cents on the dollar to the creditors, the grantor reserved to himself $1000; but if the estate should not be sufficient to pay so much, and the grantor's portion, then all were to abate *pro rata: Held,* fraudulent and void. (8) And it would seem that the ground of decision in this case, was the unreasonable reservation of an interest to the debtor, out of an iusolvent estate, establishing the same principle, of an undue benefit and advantage to the debtor, and the imposition of onerous and unconscionable burthens upon the creditor, upon which all these cases are founded.

I do not regard the case of Estwick *v.* Cailland, (9) as impairing the validity of these decisions, when we view the circumstances and *facts in the case. The jury having found that there was no fraud,*

---

(1) 11 Wend. 193 *et seq.*   (2) 12 Johns. 458.   (3) 5 Paige 13.   (4) 12 Peters 178.
(5) Jackson *v.* Lomas, 4 T. R. 166; 2 T. R. 763; Doug., 2d ed., 671.
(6) 8 T. R. 820.   (7) 2 Vern. 261.
(8) Harris *v.* Sumner, 2 Pick. 129.   (9) 5 T. R. 420.

*See p. 419 of this vol.*

the question came up upon a motion for a new trial. It also appeared that the grantor had other property, out of which he had offered to satisfy the creditor suing.

From this review of adjudged cases, and upon principles of justice, I am of opinion that this deed is fraudulent in law, and therefore null and void. It would be no answer to say, that the creditors might, notwithstanding the deed, hold the assignees liable in equity, (1) for this would be dilatory and expensive ; it would be a delaying and hindering the creditors.

The Supreme Court of Errors of Connecticut, in Ingraham v. Wheeler, (2) and the Supreme Court of Missouri, in the case of Swearingen v. Slicer, have held the deed to be void, in cases similar to this.

The authority of Murray v. Riggs, (3) has been shaken by the case of Mackie v. Cairns, (4) and Austin v. Bell. (5)

It would be extremely difficult to determine that the weight of authority was settled either way, amidst such a number of conflicting decisions. But it is much less difficult to determine that reason and justice incline the scales against such a transaction.

The judgment is affirmed with costs.

*Judgment affirmed.*