William P. Sanner, Appellant, v. Clifford D. Sanner et al., Appellees.

Gen. No. 8,403.

Opinion filed April 22, 1930. Rehearing denied May 31, 1930.

REDMON & REDMON and STEIDLEY & STEIDLEY, for appellant.

McDAVID, MONROE & MANN, J. J. BAKER and GEO. B. RHOADS, for appellees.

MR. PRESIDING JUSTICE ELDREDGE delivered the opinion of the court.

At the March Term, 1928, of the circuit court of Shelby county, William P. Sanner, appellant, filed his bill in equity making Clifford D. Sanner, Frances L. Sanner, S. S. Clapper, trustee, and numerous creditors of Clifford D. Sanner, parties defendant. In the original bill it is alleged in substance that Clifford D. Sanner was on the 23rd day of February, 1926, indebted to one H. I. Baldwin in the sum of $20,000 and that he was also indebted at the same time to the National Bank of Decatur in the sum of $10,000; that he requested complainant to sign two notes for the respective amounts payable to said creditors as a surety thereon; that complainant and Clifford D. Sanner are brothers, and Frances Sanner is the wife of Clifford D. Sanner; that on said day Clifford D. Sanner and Frances L. Sanner, his wife, and complainant executed a written agreement by which Clifford D. Sanner and his wife agreed that if it became necessary for complainant to pay the said two notes, that Clifford D.

Sanner and Frances L. Sanner would convey to him a certain farm owned by them subject to a mortgage in the sum of $24,000 releasing and waiving all rights under and by virtue of the Homestead Exemption Laws of this State, Cahill's St. ch. 52, ¶ 1 *et seq.*; that said agreement was duly acknowledged before a notary public by C. D. Sanner and his wife as their free and voluntary act for the uses and purposes therein set forth including the release and waiver of the right of homestead, and was filed for record in the recorder's office September 1, 1926; that thereupon complainant signed said two notes as surety for the said Clifford D. Sanner and afterwards, on the 28th day of September, 1926, the said two notes having become due and Clifford D. Sanner and his wife being unable to pay the same, he was compelled to pay them.

It is further alleged in the bill that after the above agreement was executed, Clifford D. Sanner and his wife in violation thereof and in fraud of the rights of William P. Sanner, and with the intention to hinder and delay him from collecting the amount he was compelled to pay out as aforesaid, did on the 28th day of August, 1926, by their warranty deed convey all the above real estate to the defendant, S. S. Clapper, for the purported consideration of $1, which said deed recites that said conveyance to Clapper is in trust only, for the benefit of the creditors of the grantors, according to the terms of a certain trust agreement of even date with said deed; that at the time said deed was executed and delivered to Clapper the latter well knew that the execution thereof was in violation of the contract of said Clifford D. Sanner and his wife wherein they agreed to convey said real estate to complainant and in fraud of the latter's rights under said contract and that the same would hinder and delay complainant in collecting from Clifford D. Sanner and his wife the amount of their indebtedness to him; that after the

payment by complainant of the two notes on which he was surety hereinabove mentioned together with interest and attorney's fees connected therewith, said Clifford D. Sanner and his wife in consideration of complainant having paid said notes, executed their promissory note for the sum of $23,969.14 with interest thereon at the rate of 7 per cent per annum which note contained the power of attorney authorizing the confession of judgment; that on August 29, 1927, judgment was entered by confession in favor of complainant and against Clifford D. Sanner and his wife on said last-mentioned note in the sum of $39,763.70; that an execution was issued and returned no property found and that an alias execution was also issued with a like result; that complainant knows of no other property than the above-described real estate out of which said judgment can be collected.

It is further alleged in the bill that the conveyance of Clifford D. Sanner and his wife to Clapper was in fraud of the rights of complainant and was for the purpose of hindering and delaying him in the collection of the indebtedness of Clifford D. Sanner and his wife; that said deed was executed after the agreement executed by Clifford D. Sanner and his wife to convey the above-described real estate to complainant in case he was compelled to pay said notes and said deed was executed and delivered to the said Clapper without the knowledge or consent of complainant; that there was no consideration for said deed to Clapper and that he as such grantee claims to hold said property in trust for the grantors or other persons in order to prevent its sale by virtue of the execution now in the hands of the sheriff of said county; that said judgment still remains in full force and effect and that there is now actually and equitably due to complainant thereupon the sum of $39,763.70 with interest thereon at the rate of 5 per cent per annum over and above all claims

which the said Clifford D. Sanner or his wife may have by way of set-off or otherwise.

The prayer of the bill is that said deed to Clapper may be set aside and declared null and void as against complainant and that the real estate conveyed therein or so much thereof as may be necessary to pay said note may be ordered to be sold by the sheriff to satisfy the execution now in his hands and that complainant may have such other and further relief in the premises as equity may require.

To this bill the defendants filed a demurrer which was sustained and thereupon by leave of court the complainant filed an amended bill. The amended bill is substantially the same as the original bill and differs therefrom only in some inconsequential changes in phraseology.

To the amended bill are attached and made a part thereof a copy of the agreement between Clifford D. Sanner and his wife with complainant executed February 23, 1926, and also copies of the deed and assignment from Clifford D. Sanner and his wife to Clapper and of the trust agreement referred to in said deed both of the latter bearing date of August 28, 1926. To the trust agreement is attached a schedule showing the names of the creditors and the respective amounts of indebtedness due them from the grantor. Among the creditors listed are H. I. Baldwin with an indebtedness of $20,853.50 and the National Bank of Decatur with an indebtedness of $10,000. There is a memorandum under each one of these names to the effect that the note is signed by W. P. Sanner as surety. There is also an addendum to the original trust agreement between Sanner and his wife and Clapper and the creditors which was subsequently executed at some date not clearly shown by the proofs. These documents

heretofore shown in the order of the dates of their execution are as follows:

"THIS AGREEMENT, made and entered into this twenty-third day of February A. D. 1926 between C. D. Sanner and wife of the town of Moweaqua, County of Shelby and State of Illinois, parties of the first part and W. P. Sanner of the County of Macon and State of Illinois, party of the second part.

"WITNESS: That the said party of the second part has signed as surety two promissory notes, one in favor of H. I. Baldwin and the other in favor of the National Bank of Decatur. Whereas if it becomes necessary that the said W. P. Sanner, party of the second part, has to pay the above said notes the said C. D. Sanner and wife, parties of the first part, agree to convey to the said W. P. Sanner, party of the second part, the following described real estate: Northwest Quarter and the West Half of the Northeast Quarter, Section 29, Town 14, North Range Three East of the Third P. M., containing in all two hundred forty acres, more or less, subject to a $24,000.00 mortgage in favor of the Prudential Life Insurance Company.

"Witness whereof we have hereunto set our hands and seals on the day and year first above mentioned.

C. D. SANNER<br>
FRANCES L. SANNER<br>
W. P. SANNER."

EXHIBIT B.

"WHEREAS, the undersigned, C. D. Sanner is indebted to various persons, and on account of serious illness has been and is now unable to pay said indebtedness in full.

"AND WHEREAS, the said C. D. Sanner desires all of his creditors to be treated in an equal manner, and to

place his property in such condition that every debt which he owes shall, if possible, be paid in full.

"Therefore, in order to carry out his desires and wishes in said matter, and to avoid the expense of a bankruptcy proceeding, and to realize the greatest amount out of his property, so that his creditors shall be paid in full if possible, he, joined by Frances Sanner his wife executes this, the following trust agreement:

"1. The said C. D. Sanner and Frances L. Sanner his wife of the village of Moweaqua, county of Shelby and State of Illinois, parties of the first part, hereinafter called the debtors, and S. S. Clapper of the village of Moweaqua, aforesaid party of the second part, hereinafter called the trustee, and the several persons, companies, corporations and firms who shall approve of this agreement, being creditors of the third part, Witnesseth:

"2. That the said debtor is indebted to the said creditors in the several sums set opposite to their respective names in the schedule hereto attached, and marked 'Exhibit A.'

"3. That in pursuance of this agreement and in consideration of the premises, the said debtor, joined by his said wife, hereby conveys and assigns unto the said Trustee, his heirs, executors and administrators, all and singular the real and personal property, credits and effects of the said debtor to which he is beneficially entitled, either in possession, reversion, remainder or expectancy, except such part or parts as may be and is held to be specifically exempt and as shown by schedule 'B' hereto attached and made a part hereof. Said real estate being conveyed by the debtor and his wife to said Trustee by a regular deed of Trust, signed, sealed and acknowledged and delivered to said Trustee for the purposes herein set out. To hold the same unto and to the use of said Trustee, his executors

and administrators, according to the respect and nature and tenure thereof, but subject to a mortgage now on the farm land of said debtor herein conveyed to said Trustee, and subject to the rights of any Life Insurance certificate held by any of the said creditors as collateral security.

"4. And for the consideration aforesaid, the said debtor joined by his said wife hereby appoint the said Trustee to be their true and lawful attorney, in their names and on their behalf to execute, sign and deliver any deed or other document which the said Trustee may think necessary or expedient for carrying into effect the trust and purposes of this agreement.

"5. And it is hereby agreed and declared that said Trustee shall stand possessed of the lands and hereditaments and personal property hereinbefore mentioned and conveyed upon trust, and shall sell and convey said lands and personal property, at such time or times, as the same shall be for the best interest of the creditors, and receive, collect and compel payment at the proper time of insurance policies, or other evidences of money owing to said debtor, as shall by these presents be conveyed to said Trustee in trust (subject to the payment thereout of such sums, if any, as any be due to encumbrancers), and all other moneys which shall come to the hands of said Trustee under or by virtue of the trusts or powers herein contained.

"6. Upon trust in the first place, to pay and retain thereout such costs, charges and expenses of or incidental to the carrying of the trust into effect.

"8. The said Trustee shall pay all claims at the proper time or times which are by law entitled to be paid in full, that are or may be entitled to priority, the same as in case of bankruptcy or insolvency, by proceedings in a Bankruptcy court.

"9. He shall pay, divide and distribute the proceeds at the proper time or times when said property

can be so disposed of to bring the most money for the benefit of said creditors, ratably unto and among the said creditors in discharge of their said debts, by such installments and at such times as the Trustee shall deem best and to pay the surplus, if any, to the said debtor, or in case of his death to his said wife.

"10. Provided, always, it is hereby agreed and declared, that notwithstanding the power of sale hereinbefore given, it shall be lawful for the Trustee to postpone the sale and collection of any part of the said premises or the collection and sale of any other property transferred to the said Trustee by these presents, at such time as is consistent with reducing the same to money as soon as this can be wisely done.

"11. And in the meantime and until said premises respectively shall have been called in, collected, sold and converted into money as aforesaid, it shall be lawful for the Trustee at his discretion to lease, manage, employ, repair and insure against loss or damage by fire or otherwise, at the cost of the Trust estate, all or any part of said premises.

"12. And it shall be lawful for the Trustee to carry on or cause to be carried on, the business of farming which the said debtor has hitherto carried on, and to use the income from said business:

"First, to pay the costs and charges as hereinbefore set out.

"Second, to pay the interest on the mortgage on said real estate, and the taxes that may become due and payable.

"Third, to pay the surplus, if any, ratably to the creditors.

"13. Provided, always, and it is hereby agreed and declared, that these presents shall not in any way prejudice or affect the rights or remedies of the said creditors against any surety or sureties or any other person or persons other than the said debtor. Nor shall these presents in any wise prejudice or affect any

security which any of the creditors may have or claim for his debts. But nevertheless, if such security shall be enforceable against the said debtor or his effects, then in that case such creditor (unless he shall consent to abandon his security) shall be entitled to receive dividends or payments hereunder, or payment in full upon so much only of the said secured debt as may remain after such security shall have been realized or such surety shall have paid the debt for said debtor, or after credit shall have been given for the full value thereof.

"14. The said debtor hereby ratifies and confirms and covenants with the said trustee that he will, if and when required by him, ratify and confirm whatsoever said trustee shall do or purport to do by virtue of the said power herein given.

"15. It is understood and declared that the said debtor now has in force in life insurance policies aggregating $100,000.00, $50,000.00 of which is at once assigned to the trustee; that $30,000.00 of which is in the hands of H. I. Baldwin as collateral security for a loan; and that E. R. Harper holds $10,000.00 of said insurance as collateral security for a loan; that if and in the event, during the life of this trust, said policies should be paid in full, the surplus after the payment of the loans for which they are collateral security, shall be paid to the trustee for the benefit of the other creditors. Provided, that policy No. 2544279 for $10,000.00, shall remain in the hands of the debtor during his natural life, he to receive whatever dividends or payments that may be made to him during that time, but that at his death the face of said policy, if necessary, shall be paid to said Trustee for the benefit of his creditors. Provided, always, that all of said life insurance policies are hereby conveyed to said Trustee, or the proceeds thereof, subject to the rights of the parties hereinbefore set out.

"16. It is further agreed and declared that this trust agreement shall continue in full force and effect until after the death of the said debtor, C. D. Sanner, unless sooner terminated by direction of a majority in number and amount of the creditors, directing said property to be turned into money and paid ratably among said creditors. Provided, the said debtor hereby declares it to be his intention that all of said creditors shall share pro rata in the proceeds of all his property, and in the event that any creditor attempts by suit or other legal proceeding to acquire a preference, or refuses to consent to this trust, then the Trustee herein is authorized to file a petition for said debtor in Bankruptcy.

"17. It is agreed by the said Trustee and the Creditors that the compensation to be received by the Trustee shall not exceed the sum of Two Hundred Fifty Dollars annually, but not then until the interest on the mortgage indebtedness and the taxes and fire and tornado insurance on the trust property are fully paid. Provided, on termination of this trust by full payment of all the creditors, then said Trustee shall receive such fee as shall be reasonable. If said trust shall sooner be terminated by the direction of the majority, both in number and amount of said creditors, the compensation to be paid said Trustee on the ending of said trust, shall be the same compensation as is allowed now by the laws of Illinois to administrators and executors.

"18. In case of the death or resignation of the Trustee herein named, it shall be lawful and the creditors are hereby authorized by a majority of vote, both number and amount, to elect another Trustee to fill the vacancy so caused.

"19. It is further agreed that if and when said creditors shall be paid in full the several amounts due and owing to them, that the surplus of said property

or the proceeds thereof shall be paid to the said Frances L. Sanner, wife of said debtor.

"20. This trust shall continue for one year after the death of the said C. D. Sanner, unless sooner terminated by the Creditors.

"In witness whereof, the parties hereunto have set their hands and seals this 28th day of August, 1926.

|  |  |
|---|---|
| C. D. Sanner. | (Seal) |
| Frances L. Sanner. | (Seal) |
| S. S. Clapper, Trustee. | (Seal) |
| C. A. Hedges. | (Seal) |
| T. J. Gorden. | (Seal) |
| Mrs. Ted Sash. | (Seal) |
| Christiono B. Friedley. | (Seal) |
| E. R. Harper. | (Seal) |

Witness to mark: E. R. Harper

his
John x Mathias   (Seal)
mark

|  |  |
|---|---|
| Ira S. Deam. | (Seal) |
| Emma A. Gaskill. | (Seal)" |

SCHEDULE A.

"List of Creditors and the amounts owing to each:

H. I. Baldwin, Decatur, Illinois............$20,853.50

Note: $30,000.00 Life Insurance Policy held by creditor as collateral security. In addition thereto, the note is signed by W. P. Sanner.

National Bank of Decatur, Decatur, Illinois   10,000.00

Note: Note is signed by W. P. Sanner as security.

Samuel Sanner ......................... 10,000.00
C. B. Friedley.......................... 10,000.00
Emma Gaskill ......................... 8,000.00
E. R. Harper........................... 4,000.00
  (Life Insurance Policy of $10,000.00 held by E. R. Harper as collateral security.)

| | |
|---|---|
| C. A. Hedges | 2,500.00 |
| T. J. Gorden | 2,500.00 |
| Caroline and Ira Deam | 2,000.00 |
| John Mathias | 1,500.00 |
| Edna Primmer Lash | 500.00 |

"In addition to the foregoing, there is a loan on the farm in the sum of $24,000.00."

#### ADDENDUM

"ADDENDUM to the original Trust Agreement between C. D. Sanner and wife Frances L. Sanner, of the first part, S. S. Clapper, Trustee of the second part; and the various creditors signing said original Trust Agreement and this Addendum, parties of the third part, WITNESSETH:

"That the said several parties hereto agree that said original Trust Agreement is confirmed in every particular, with the following exceptions:

"1. It shall be lawful for the Trustee to postpone the sale and collection of any part of said premises, or the collection and sale of any other property transferred to said Trustee by these presents, for the period of two (2) years from the date of said original Trust Agreement unless otherwise directed by a majority of said creditors, both in number and amount of claim.

"2. It shall be lawful for the Trustee to postpone the sale of said trust estate or any part thereof for a period of one additional year after the expiration of two years as above stated, unless otherwise directed by a majority in number only of said creditors.

"3. And said Trustee may postpone the sale of said trust property as set out in said Trust Agreement, for a further period not to exceed one year after the expiration of three years, by the unanimous vote

of all the creditors of the said C. D. Sanner and Frances L. Sanner.

"It is agreed by all the parties hereto that this amendment to the original Trust Agreement shall not affect the original Trust Agreement except as this paper amends the same, and shall be attached to and form a part of the said original Trust Agreement.

"Witness the hands and seals of all the parties hereto this ............ day of December, 1926.

|  |  |
|---|---|
| C. D. Sanner. | (Seal) |
| Frances L. Sanner. | (Seal) |
| S. S. Clapper, Trustee. | (Seal) |
| his | |
| John   x   Mathias | (Seal) |
| mark | |
| E. R. Harper. | (Seal) |
| T. J. Gorden. | (Seal) |
| C. A. Hedges. | (Seal) |
| C. B. Friedley | (Seal) |
| Ira S. Deam. | (Seal) |
| Lutie O. Sanner. | (Seal) |
| Ralph E. Sanner. | (Seal) |

Adm. of estate of Samuel Sanner, Dec'd."

To this amended bill the defendants filed a joint and several answer in which they admit the execution of the document mentioned in the bill and deny that at the time of execution of said deed Clapper or any of the other defendants knew that the execution thereof was in violation of the contract and deny that it was a fraud on the rights of the complainant under said contract and that the same hindered and delayed the complainant in collecting from the said Clifford D. Sanner and his wife the sums they owed him, but aver that said deed and trust agreement were made

only after full conference among all the creditors of said Clifford D. Sanner and wife, including the complainant, and were made and executed after full approval and consent of all of said parties, including the complainant, and was a common enterprise shared in by the complainant and to which he gave his approval and consent and into which by his words and conduct urged and induced the defendants to enter; that complainant repeatedly expressed his satisfaction with said arrangement and trust and his intention to join therein and solicited other creditors to sign the trust agreement and repeatedly expressed his intention to join therein and that by reason of his active solicitation several others were induced to enter into said trust agreement; that he repeatedly promised to sign said trust agreement and join with the trustee and other creditors in consultation about the method of handling said trust matter and at all times participated and joined therein until recently when he completely reversed his position and attempted to obtain a preference over the other creditors; that all steps taken under said trust agreement have been with the knowledge and consent and solicitation of complainant and with his agreement to sign the same; that complainant by his words, actions and conduct had repeatedly ratified said trust agreement and the acts under it and has thereby bound himself thereto and it is against equity and good conscience for him to take any steps which will give him preference over the other creditors in the trust property; that said defendants had the right in the beginning of the matter to bring suit against said Clifford D. Sanner and enforce their rights and had the right to obtain a preference for themselves; that they were induced by reason of the acts of complainant to enter into said trust agreement and to permit said trust property to be pledged ratably and proportionately as in said trust agreement

is provided and that they thereby give up their rights to enforce their claims preferentially and that by reason of this fact and by reason of the acts and conduct of the complainant he is estopped from attempting to get any preference against said trust property, etc.

The cause was referred to the master in chancery and to his report objections were filed by both parties. On a hearing before the chancellor the objections were allowed to stand as exceptions to the report and the exceptions of the defendants thereto were sustained and those of the complainant were overruled. The chancellor found in substance that complainant was estopped in equity from enforcing his equitable lien, if he had any, his words and acts preceding the execution of the deed of trust and the trust agreement and entered a decree dismissing the bill for want of equity.

The first question which must be determined is whether the agreement between complainant and Clifford D. Sanner and his wife executed at the time he became surety on the notes of the latter created an equitable lien. ''As a general rule any express executory contract in writing, based upon a valuable and adequate consideration, whereby one party clearly indicates an intention to charge or appropriate some particular property, real or personal, therein described or identified, as security for a debt or other obligation, or whereby one party promises to assign, convey, or transfer the property as security for such a debt or obligation, creates an equitable lien upon the property so indicated which is enforceable against the property in the hands, not only of the original contractor, but also of his heirs, personal representatives, assigns, or purchasers or encumbrancers with notice.'' 37 C. J. 315. In the case of *Oppenheimer v. Szulerecki,* 297 Ill. 81, the court approved this rule which is also laid down in Pomeroy's Equity Jurisprudence. In *Aldrich v. Ederer Co.,* 302 Ill. 391, the court held that

whenever parties enter into an express executory agreement in writing indicating an intention to make some particular property, real or personal, or a fund, security for a debt, there is created an equitable lien on the property described in such contract; that it is not a *jus in re* or a *jus ad rem;* neither a debt nor a right of property, but a remedy for a debt, and is simply a right of a special nature over the thing which constitutes a charge upon the thing, so that the very thing itself may be proceeded against in an equitable action and either sold or sequestered under a judicial decree and its proceeds applied upon the demand of the creditor in whose favor the lien exists. There is no doubt but that this agreement created an equitable lien on the real estate therein mentioned for the debt complainant obligated himself to pay by becoming a surety on the two notes of his brother. The fact that complainant after he paid the notes of Clifford D. Sanner took a note from Sanner and his wife for the amount he so paid did not waive the lien created by the agreement. *Brady v. Anderson,* 24 Ill. 110; *Paddock v. Stout,* 121 Ill. 571; *Vansant v. Allmon,* 23 Ill. 30; *Rohrer v. Deatherage,* 336 Ill. 450.

It is claimed by appellees that the trust deed executed by Clifford D. Sanner and wife to Clapper as trustee and the trust agreement executed by Clifford D. Sanner and wife, Clapper and certain creditors of Clifford D. Sanner constitute a common-law assignment for the benefit of the creditors of Clifford D. Sanner and wife. It is apparent from the wording of these documents that they were only intended to apply to such creditors as signed the trust agreement. Paragraph No. 1 of the trust agreement designates the parties thereto as C. D. Sanner and wife as parties of the first part, S. S. Clapper, trustee, party of the second part, "and the several persons, companies, corporations and firms who shall approve of this

agreement, being creditors, of the third part.'' The addendum to the original agreement also designates C. D. Sanner and wife parties of the first part, S. S. Clapper, trustee, party of the second part and the various creditors signing said original trust agreement and the addendum parties of the third part and then sets out: ''That the said several parties hereto agree that said original Trust Agreement is confirmed in every particular, with the following exceptions:'' The addendum concludes as follows: ''It is agreed by all the parties hereto that this amendment to the original Trust Agreement shall not affect the original Trust Agreement except as this paper amends the same, and shall be attached to and form a part of the said original Trust Agreement.'' While the National Bankruptcy Act of 1898 suspended the Illinois Statute concerning voluntary assignments, Cahill's St. ch. 72, ¶ 40 *et seq.*, a debtor may nevertheless make a common-law assignment for the benefit of his creditors *(Pogue v. Rowe,* 236 Ill. 157) and if these instruments do in fact constitute a common-law assignment then the debtor had a right to prefer one creditor over another. *Howell v. Edgar,* 4 Ill. 417, *Conkling v. Carson,* 11 Ill. 503; *Gibson v. Rees,* 50 Ill. 383; *Cooper v. McClun,* 16 Ill. 435. In our opinion, however, under the facts in this case the rights of the parties do not depend upon the solution of this question.

The proposition is advanced by appellees that even if the agreement between complainant and Clifford D. Sanner and wife for the conveyance did in fact by its terms create an equitable lien, yet appellant cannot avail himself of such lien for the reasons, first, because no such lien is claimed in the bill of complaint; and second, because appellant is estopped by his words and acts from asserting the lien. All the necessary facts to establish such a lien were set out in the original bill and also in the amended bill. The claim that such a

lien existed was urged and argued before the master in chancery as is shown by his report: "In the argument of Counsel for the Complainant it was urged with considerable force that the instrument known as 'Exhibit A' created an equitable lien in favor of the Complainant on the Two Hundred Forty (240) acres of land mentioned in said instrument. While no specific charge of that kind was contained in the Bill nor in the prayer for relief in said Bill it is now contended by the Complainant as one of the grounds for relief." On the hearing before the chancellor appellant asked leave to amend the amended bill by inserting therein words to the effect that the execution of said written agreement between complainant and Clifford D. Sanner and his wife created an equitable lien upon said lands mentioned therein in favor of the complainant to secure complainant for all money which he would have to pay out on account of the signing of the two notes as surety for Clifford D. Sanner and his wife. Such leave was granted and the amendment made. This last amendment was but a conclusion of law and added nothing to the force and the averments already in the original and amended bills, and even if this were not so complainant had the right to amend his bill to conform to the proofs at any time before the final decree was entered.

As to the second proposition of appellees we are not impressed with the reasons advanced for the application of the doctrine of estoppel. The assignee under a common-law assignment for the benefit of creditors is not a purchaser for value but takes only the interest of the assignor and is subject to all the equities in third parties whether the assignee has knowledge thereof or not. In this case the assignee had full knowledge of the equitable lien of appellant. He himself testified that appellant gave him the agreement and requested him to procure a deed from the

debtor and his wife in pursuance thereof; that he took the agreement to the debtor and told him of appellant's request and that he advised the debtor himself not to execute the conveyance called for in the agreement but to make an assignment of his property for the benefit of all his creditors. The testimony of the debtor and his wife and of the assignee is to the effect that the assignment was later executed for the purpose of preventing appellant from taking advantage of his lien. It was said in the case of *Hooven, Owens & Rentschler Co. v. Burdette,* 153 Ill. 672: "The rule is well settled that the assignee of a failing debtor takes the property assigned subject to all equities, liens or incumbrances which existed against the same in the hands of the insolvent." It is held in *Hefner v. Vandolah,* 57 Ill. 520: "The doctrine of estoppel *in pais* is to prevent injuries arising from acts or declarations which have been acted on in good faith, and which it would be inequitable to permit the party to retract. In order to create such an estoppel, the party estopped must have induced the other party to occupy a position he would not have occupied but for such acts and declarations. *Knoebel v. Kircher,* 33 Ill. 308." In the case of *Lowenberg v. Booth,* 330 Ill. 548, the rule of equitable estoppel is defined as follows: "In order to invoke the principal of equitable estoppel six elements must appear: (1) Words or conduct by the party against whom the estoppel is alleged amounting to a misrepresentation or concealment of material facts: (2) the party against whom the estoppel is alleged must have knowledge, either actual or implied, at the time the representations were made, that they were untrue; (3) the truth respecting the representations so made must be unknown to the party claiming the benefit of the estoppel at the time they were made and at the time they were acted on by him; (4) the party estopped must intend or expect that his conduct

or representations will be acted on by the party asserting the estoppel or by the public generally; (5) the representations or conduct must have been relied and acted on by the party claiming the benefit of the estoppel; and (6) the party claiming the benefit of the estoppel must have so acted, because of such representations or conduct, that he would be prejudiced if the first party is permitted to deny the truth thereof.'' The proofs in this case show that during the time the meetings were held in Clapper's office at which Clapper and various creditors were present and the subject matter of the execution of the trust deed and the trust agreement and the terms thereof were discussed, and at the time of the final execution thereof by the debtor, trustee and some of the creditors, complainant was not in fact a creditor. The notes on which he was surety had not become due and he had not paid the same. In the schedule of creditors attached to the trust agreement his name is not listed therein as a creditor. He did not pay the notes until September 28, more than a month after the execution of the trust agreement. The addendum to the trust agreement was not executed, the proofs show, until some time in the latter part of December 1926, four months after the original trust agreement and deed of assignment. This addendum gives the trustee further powers and discretion in the postponement of the settlement of the estate of the debtor. Its effect was to create a new agreement *ab initio* and there is no pretense or proof that complainant ever in any way at any time acquiesced in the trust agreement as amended by the addendum. The number of meetings of the creditors held at Clapper's office prior to the execution of the trust agreement is uncertain. Some witnesses state there were four and some that there were three. Complainant testified that he only attended two of the meetings. Some of the other witnesses testified that he

was present at all of them and others admit that he was not present at some of them. Those creditors who testified that complainant stated that the execution of the trust agreement was the proper thing to do and that he was in favor of it, also testified that he repeatedly said that he would not sign it until he had consulted with his lawyer. It is hard to reconcile this testimony. The evidence is conclusive that the proposed trust agreement was discussed, criticized and redrafted several times before it was finally accepted and executed by those creditors who did sign it. The trustee, Clapper, and one of the creditors testified that complainant was asked by Clapper to procure the execution of the trust agreement by one of the creditors who had never attended any of the meetings and that he agreed to do this and did so. Complainant denies that he ever solicited any of the creditors to sign the agreement and no creditor testified that he or she signed the agreement at his solicitation and no witness testified that he heard or saw appellant request any creditor to sign the agreement. It may be true that at some of the meetings complainant might have expressed an opinion in the presence of some of the creditors that the proceeding contemplated would or might be a good thing and that he was in favor of it, but the evidence stands uncontradicted that he at all times stated he would not sign the trust agreement without first consulting his lawyer. At all these times, when these statements were alleged to have been made, appellant was not in fact a creditor of the debtor and the creditors knew that he was not such a creditor and knew that he would not execute the agreement without first seeking legal advice. While he probably knew that he would in all probability have to pay the notes on which he was surety for the debtor when they became due, yet, at the same time, he also knew that in that event he had what he thought was security by rea-

son of the written agreement for the conveyance of the land to him executed by the debtor and his wife. He was a farmer and it is not unreasonable that under the circumstances he should desire to seek the advice of counsel and learn what his legal rights were. At these meetings, he was only one individual among a number of creditors who were present and everyone knew that the debtor was in financial trouble but there is no evidence to show that he was actually insolvent. While Clapper testified that the trust agreement as finally drafted was read to all those present at the meeting, it is doubtful whether complainant and the creditors really knew the full import of all the provisions in such a lengthy document and Clapper also testified that complainant asked him for a copy of the agreement which he refused to give to him on the ground that he had no more copies. As collateral security for the debtor's note of $20,853.50 payable to H. I. Baldwin on which complainant was surety the debtor, Clifford D. Sanner, had assigned to said Baldwin life insurance policies for $30,000 as collateral security. When complainant paid this note Baldwin delivered to him this collateral security. Subsequently complainant requested Clapper to procure from the debtor an assignment of the policies to him in order to enable him to raise enough cash to pay the two notes on which he was surety. The policies had a loan value of $6,468.38. Clapper procured the assignment and delivered the same to complainant who thereupon procured as a loan on the policies said sum of $6,468.38. This transaction is also urged as an evidentiary act of estoppel. A surety who obligates himself to pay a debt may take security to protect himself in case of the maturity of the obligation and he had a right to protect himself by procuring all the security possible. There was nothing in this transaction which can be construed as a waiver of the equitable lien impressed

upon the real estate of the debtor in consideration of his becoming surety upon the latter's notes nor does it in any way tend to make him a party of the trust agreement. In our opinion the evidence in this case does not tend to show that such creditors as executed the trust agreement and the addendum thereto were influenced so to do by any words or acts of complainant or that any of such acts constituted a waiver of his equitable lien or placed him in a position where he was bound by said trust agreement as though he himself had signed it. The doctrine of equitable estoppel can have no application to the facts proved by this record.

Section 13 of the trust agreement provides that the same shall not in any way prejudice or affect the rights or remedies of said creditors against any surety or sureties of any other person or persons other than the said debtor, nor shall it in any way prejudice or affect any security which any of the creditors may have or claim for his debts, but if such surety shall be enforceable against said debtor or his effects, then in that case such creditor (unless he shall consent to abandon his security) shall be entitled to receive dividends thereunder or payment in full upon so much only of the secured debt as may remain after such security shall have been realized or such surety shall have paid the debt of the debtor or after credit shall have been given for the full value thereof. There is no evidence that complainant ever expressly consented to abandon the security of his lien and unless the facts above enumerated can be construed as constituting such an abandonment then there was none. From what we have already said there was no abandonment or waiver of his equitable lien.

When complainant paid the debtor's note held by Baldwin, the attorney for Baldwin charged him $900 attorney's fees provided by the note in case judgment

was entered thereon and threatened to place the note in judgment unless he paid him this amount as attorney's fees. Complainant paid the $900 and this sum is included in the judgment note payable to complainant and executed by the debtor on which judgment was subsequently entered. Complainant may have thought that he was compelled to pay this attorney's fee but nevertheless it was not a legitimate debt of the debtor and in equity and good conscience the latter should not be charged with this amount. The judgment should be credited with the sum of $6,468.38 received by complainant from the loan on the insurance policies and also with the sum of $900, the amount he paid as attorney's fees.

The decree of the circuit court is reversed and the cause remanded with directions to enter a decree in accordance with the prayer of the amended bill after allowing the credits on the judgment hereinabove specified.

*Reversed and remanded with directions.*